CHURCH OF GOD et al. *v.* TOMLINSON CHURCH OF GOD et al.

(*Knoxville*, September Term, 1951.)

Opinion filed March 7, 1952.

MAYFIELD & MAYFIELD, of Cleveland, and HARRY J. SCHAEFFER, of Chattanooga, for plaintiffs in error.

CORN & BELL, of Cleveland, and STRANG, FLETCHER & CARRIGER, of Chattanooga, for defendants in error.

586

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

In 1927 the complainant, an unincorporated religious society, filed an original bill in the Chancery Court of Bradley County, Tennessee, against the defendants, as representatives of an unincorporated religious society, for an injunction restraining the said defendants from using the name "Church of God" in any and all of their religious and secular activities, and for other injunctive relief. The bill was sustained, and a final decree was pronounced in this Court at Knoxville, as follows:

"The Court is of opinion and therefore adjudges and decrees that the organization calling itself the Church of God, and represented by F. J. Lee as general overseer, and by M. S. Lemons * * * is the true and original Church of God, and as such is exclusively entitled to the name and properties of said church and is entitled to the aid of the courts in procuring and protecting the same.

"It is therefore ordered, adjudged, and decreed by the Court that defendants A. J. Tomlinson, A. J. Lawson, Homer Tomlinson * * * and all other defendants in this cause and all other persons who are represented by any of the above-named defendants * * * or are members of the same church or organization with the said

defendants, and all their agents, representatives, and fellow members are hereby expressly and perpetually enjoined from claiming or representing themselves to be connected in any way with the Church of God or any of the departments or allied organizations of said church; from keeping and retaining any contributions or remittances of any kind sent to the Church of God; from receiving members into any church or organization upon the claim or representation that the same is the Church of God; from telling, printing, claiming, or representing that the complainants are not the Church of God and the true officers thereof, and from hindering, molesting, or in any way blocking or impeding the business and progress of the complainant Church of God.

"Defendants will be permitted to worship in such lawful manner as they see fit, provided only that they do not use the name of said church or take other steps to make people believe that they are said complainant church or do not undertake to procure or hold the properties thereof. Defendants will be permitted to adopt another and distinctive name, or may by adopting such suitable prefix or suffix as to avoid any confusion, use the name Church of God, but before so doing shall file in this Court notice of any name proposed to be adopted, giving complainants notice thereof, and procure the assent of the Court thereto".

The cause was docketed in the Chancery Court as "No. 1891". Pursuant to the foregoing decree the defendant, with the Chancellor's approval, adopted the name, "Tomlinson Church of God". It appears, however, that later the defendant filed a petition for writ of error *coram nobis* asking leave to change that name to "Church of God over which A. J. Tomlinson is General Overseer" which was denied. The injunction theretofore granted

against the use of the name, ''Church of God'', was continued in full force and effect.

On April 13, 1939, the perpetual injunction which was pronounced in the case of *Church of God* v. *A. J. Tomlinson, et al.,* (Cause 1891) was by agreement revived and repronounced. It appears that upon the death of A. J. Tomlinson the defendant group named M. A. Tomlinson as ''General Overseer''.

On May 11, 1949, the complainant Church of God, being the same complainant as in Cause 1891 and in which a perpetual injunction was entered by agreement filed its petition against the present named defendants, to-wit: M. A. Tomlinson, General Overseer, and other named persons, all officials and representatives of the ''Tomlinson Church of God''. They were sued as individuals and as officials and representatives of the Church. The petition recites: ''This petition is filed in Chancery Cause No. 1891 of Bradley County, Tennessee.'' Reference is made to the decree that was pronounced in 1929 and renewed and extended by decree entered on April 13, 1939, the same being a consent decree.

The complainant charges the defendants with committing repeated acts in violation of the injunction against the use of the name, Church of God, and with appropriating to themselves money and other property of complainant in violation of said injunction; that said defendants solicited and accepted funds upon the false representation that they represented the true Church of God, knowing that many such contributions and donations were intended as gifts to the complainant. The petitioners prayed for leave to ''file this petition in this cause'' and that the injunction heretofore granted be renewed and repronounced ''if need be'', and that defendants be required to show cause why they should not

be cited for contempt. The Chancellor by fiat directed the filing of said petition as prayed for "in Cause No. 1891".

In September, 1949, the foregoing petition was amended charging other acts of defendants in violation of the injunction; in appropriating money and property belonging to petitioners to their great financial damage. The prayer was for a citation of contempt and for a decree in the sum of $250,000 as damages for the violation of the decree formerly entered. An injunction writ was issued and also a writ of attachment and served upon the defendants. The defendants filed an answer and cross-bill admitting that a final decree had been entered in 1929 and that an injunction was granted as prayed for in that cause. Contention was further made that the defendants had adopted the name "Church of God over which A. J. Tomlinson is General Overseer", this change being made pursuant to a resolution adopted by the General Assembly of the Church. It is not material to the present controversy, however, that we give further consideration to the averments in the answer and cross-bill since they were withdrawn by leave of the court. They were then permitted to file pleas in abatement and in bar which will be later discussed in this opinion.

The record discloses that in 1948 there was a petition filed in Cause 1891 seeking a repronouncement of the decree of 1929 and for further injunctive relief, etc. This petition was docketed by the Clerk and Master as No. 3445, as if it were an independent lawsuit. The Chancellor seems to have considered it as such, although the entire record before us shows that complainant's cause of action is based upon the decree in the original Cause 1891, and it was to revive and repronounce said decree if necessary. As we view the record the com-

plainant's petition of 1948 was filed prior to the tolling of the ten year statute of limitations.

The defendants' pleas in abatement are as follows: (1) that since the filing of their amended answer they have learned that the complainant "is not an association of individuals as it has represented to the Court, but was incorporated in June, 1945"; (2) that the complainant "has no legal status as averred because it is neither a natural nor an artificial person" (Tr. p. 89).

The plea was sustained by the Chancellor. It was further decreed (1) that "so much of complainants' bill, as amended, in this Cause 1891 as seeks to have a re-pronouncement of a former decree in said Cause 1891 is barred by the ten year statute of limitations as set out in defendants' plea in bar"; (2) "The Court is of opinion and holds, however, that this suit on the injunction decree heretofore entered in the original suit in Cause 1891 in the year 1929, and relied upon by complainants, is not barred by the statute of limitations, and so much of complainants' demurrer or motion as seeks to strike defendants' plea of the ten year statute of limitations as to said suit to enforce the injunction is sustained. *To this ruling and action of the Court, defendants except."*; (3) that a contempt proceeding against the defendants will not lie except for acts committed within one year next preceding the filing of the petition; and (4) that defendants' contention that the suit is for unliquidated damages is not well taken. (Tr. p. 101).

From the foregoing decree of the court both complainants and defendants appealed and assigned errors. The decree to which we have referred discloses the questions presented for our consideration and decision.

■■ The first question raised in the complainants' assignments of error is that the Chancellor committed

error in holding that the petition filed in 1948 was a nullity on the ground that "there is neither a natural nor artificial person before the Court as a complainant" and hence "has no legal right to proceed in this cause."

It is conclusively shown that when this question was raised before the Chancellor the complainants' counsel asked leave to amend the petition by naming the officials of the Church of God, on whose behalf the bill was filed. This was disallowed, the reason being given that it would prejudice the defendants since the statute of limitations of ten years had run, and the proposed amendment could not relate back to the date of filing the petition, to-wit May 31, 1948.

It will be noted that the defendants had answered the petition of 1948 and acknowledged the right of the complainant as a church to maintain the suit and that it was the same church that was successful in the original Cause 1891. It was approximately a year later that the defendants were allowed to withdraw their answer and plead in abatement. In these circumstances it was error to refuse complainant the right to amend. Nor can we agree that the proposed amendment "could not relate back to the date of filing the suit on May 31, 1948." We think it would.

It is said in Gibson's Suits in Chancery a bill may be defective "for want of proper parties" (Sec. 666). As to amendments generally it is said: "And such is the practice of the Courts, their object being to enable the complainant to get before the Court every matter and *every party necessary to a full adjudication of the matters of controversy.*" (Sec. 667). (Italics ours). It is further stated in the same section: "The rights of the parties to a suit are ordinarily determined as though the decree was pronounced *on the very day the bill was*

*filed;''*—''Courts are very liberal in allowing new parties to be made, and when the defendants already in Court are not prejudiced thereby, and when no delay will result from the amendment, no terms are ordinarily imposed.'' (Sec. 671).

The authorities seem to be divided on the question as to whether or not an amendment to a pleading, after the running of the statute, relates back to the filing of the original bill or issuance of the summons. In addition to the foregoing citations from Gibson's Suits in Chancery, this court is definitely committed to the proposition that the proposed amendment relates back to the commencement of the action. *Love* v. *Southern R. Co.*, 108 Tenn. 104, 65 S. W. 475, 55 L. R. A. 471; *Whitson* v. *Tenn. Central Ry. Co.*, 163 Tenn. 35, 40 S. W. (2d) 396. In the former case numerous decisions are cited to the effect that such an amendment should be allowed where it does not change the cause of action or the real parties in interest and ''the defendant is not deprived of any defense which he had to the original suit.'' Such an amendment relates back to the commencement of the action. To the same effect is *Lilly* v. *Tobbein,* 103 Mo. 477, 15 S. W. 618, 23 Am. St. Rep. 887 '' (wherein the action was instituted in the name of an unincorporated church society as plaintiff and an amendment was allowed substituting as plaintiffs members of the church suing in their own behalf as well as in behalf of all members); *Douglas* v. *Daniels Bros. Coal Co.*, 135 Ohio St. 641, 22 N. E. (2d) 195, 123 A. L. R. 761.'' 34 Am. Jur., footnote pp. 221, 222.

We therefore hold that the pleading of May 31, 1948, and misdocketed by the Clerk, was sufficient ''action commenced'' within the ten year period from the consent decree of 1939. Since the present action is held to be

within the statute barring judgments after a lapse of ten years, Code, Section 8601, the question of the necessity of repronouncing the decrees of 1929 and 1939 is pretermitted.

The complainant's assignment of error, complaining of the Chancellor's action in disallowing the amendment to the petition filed May 31, 1948, and in dismissing said petition is sustained.

■ It is next insisted by the defendants that the Chancellor erred in overruling their motion to dismiss the cause on the ground that complainant sought to recover $250,000 as *unliquidated damages;* that the Chancery Court was without jurisdiction of such an action. We think this averment and prayer for damages is incidental to the real cause, to-wit, an action for contempt for using the name, ''Church of God'', in violation of the court's decree. Moreover it is not an action to recover ''profits'' or loss of business as such but to recover definite and fixed sums of money in the form of contributions and remittances to the defendant.

■ The next insistence of the defendants is that ''Plaintiffs' demands are barred by their laches in allowing defendants to use their present name for more than twenty years. The plaintiffs are estopped by their long acquiescence in defendants' use of its present name.''

It appears from the pleadings that the General Assembly which is the governing authority over the defendant church group, or is alleged to be, passed a formal resolution in September, 1929, adopting the name ''Church of God over which A. J. Tomlinson is General Overseer''. The contention is made that this name has been used openly and publicly (except upon the death of A. J. Tomlinson the name of M. A. Tomlinson was substituted); that complainants by their silence have

acquiesced in its use and that for this reason the doctrine of laches is applicable. It is further insisted that they complied with the Chancery Court decree of 1939 in that they added to the name, ''Church of God'', the suffix ''over which A. J. Tomlinson is General Overseer''. The decree which enjoins the defendants from using the name, ''Church of God'' provides in the last paragraph: ''Defendants will be permitted to adopt another and distinctive name, or *may by adopting such suitable prefix or suffix* as to avoid confusion use the name Church of God, but before so doing shall file in this Court notice of any name proposed to be adopted, giving complainants notice thereof and procure the assent of the Court thereto.'' (Italics ours).

While the defendants added the ''suffix'' to the name, there is no insistence that they undertook to otherwise comply with the decree. It thus seems to us that the defendants acted in open defiance of the Chancellor's decree. On October 14, 1932, A. J. Tomlinson and others, officers of the defendant group, were held in contempt for violating the Court's decree. Again at the April term of the Chancery Court in 1936 there was a decree entered holding A. J. Tomlinson in contempt for ''representing that the organization of which he is the General Overseer is the Church of God'', although at that time the General Assembly had added the ''suffix'', to which we have made reference. The plea of ''laches'' was not interposed in this contempt proceeding notwithstanding the lapse of seven years from the date the General Assembly undertook to adopt a new name. It thus appears that defendants were not using the name without protest for ''more than twenty years'' as claimed.

The decree of 1929, and repronounced in 1939, is the law of this case. We cannot do otherwise than hold

that the defendants' use of the present name "Church of God over which M. A. Tomlinson is General Overseer" is in violation of said decree for the reason: (1) there was no proceeding in court or notice to the complainants of the proposed name; (2) the proposed name was not approved by the Chancellor as one that would "avoid confusion" which the decree clearly contemplated. Conceding that complainants have been guilty of delay in filing this proceeding, it does not follow that the cause is barred on that account. In the case at bar the defense of laches is not available for the reason that no one should be permitted to acquire rights based upon his own wrong.

"It is not for a wrongdoer to impose extreme vigilance and promptitude as conditions to the exercise of the right of the person injured. So the doctrine of laches does not apply where defendant has acted in open and known hostility to plaintiff's rights and has been misled by no apparent acquiescence on plaintiff's part; the law does not demand the utmost exertion of diligence in repelling a hostile invasion of one's rights deliberately undertaken with full knowledge of all the facts." 30 C. J. S., Equity, Section 117, p. 539.

It is also said in 30 C. J. S., Equity, Section 113, p. 524: "Where, however, plaintiff comes into equity, not for the creation or establishment of an executory right, but for the mere protection of an executed or vested legal right, the doctrine of laches has little, if any, application; and plaintiff is precluded from relief only by such conduct as creates an abandonment of the legal right itself, or an estoppel to assert it against defendant." The contention that laches bars this suit is overruled.

It is next insisted that the Chancellor erred in his ruling that defendants cannot be held in contempt for

acts alleged to have been committed more than one year next preceding the citation to "show cause", etc. We think the Chancellor was correct, on the ground that such acts are misdemeanors and are barred by the statute of limitations of one year. It results that all acts in violation of the decree and alleged to have been committed more than one year prior to May 11, 1949, are barred by the statute. While the defendants may not be thus dealt with by the court, they may be required to refund "any contributions and remittances of any kind" received by them and which were plainly intended for the complainant "Church of God", as well as all other property acquired in violation of said decree. We are of opinion that the defendants are indebted to the complainant for the value of such property, and are liable therefor except such as may be barred by the statute of limitations of six years.

■ ■ Responding to the complainants' contention that defendants are liable in damages for the unlawful use of the trade name, "Church of God", we hold as follows. The right of the complainant to the exclusive use of the name "Church of God" is a closed question. It cannot be relitigated. The right, however, to sue the defendant for the unlawful use of the name as an infringement upon a "trade-mark" or "trade name" cannot be maintained. "Trade-marks" or "Trade names" are thought of only in connection with commercial activities, the buying and selling of articles of merchandise wherein such articles have a special value due to the use of a trade-mark. The law defines a "trade-mark" or a "trade name" (the distinction being highly technical) as a "sign, device, or mark by which the articles produced or dealt in by a particular person or organization are distin-

guished or distinguishable from those produced or dealt in by others." 52 Am. Jur., p. 507.

*(11)* It is very obvious that the law which gives protection to a trade name has no application to the instant case since neither the complainant nor the defendant is dealing in any article of merchandise that is the subject of barter and sale. However, the name, "Church of God", has a certain value as a trade name as where a rival organization uses it to the financial disadvantage of one who is entitled to its exclusive use. In the instant case the measure of damages would be all such monies and property as the defendants received in the way of "contributions and remittances" and which are shown to have resulted from the unlawful use of said name. So that whether the action be for damages or for money had and received the result is practically the same.

The Chancellor's decree is reversed, except as otherwise affirmed, and the cause is remanded for repronouncement of the decree of 1929 and 1939 and for further proceedings consistent with this opinion.