**ELVIS PRESLEY ENTERPRISES, INC., Plaintiff–Appellee,**

v.

**ELVISLY YOURS, INC.; Elvisly Yours, Ltd.; Sid Shaw, Defendants–Appellants.**

No. 90–6045.

United States Court of Appeals, Sixth Circuit.

Argued May 23, 1991.

Decided June 27, 1991.

C. Barry Ward (argued), William R. Bradley, Jr., Glankler, Brown, Gilliland, Chase, Robinson & Raines, Memphis, Tenn. and W. Mack Webner, Nies, Webner, Kurz & Bergert, Arlington, Va., for plaintiff-appellee.

Peter M. Brown, Asst. County Atty. (argued), Memphis, Tenn., for defendants-appellants.

Before KENNEDY and SUHRHEINRICH, Circuit Judges, and LIVELY, Senior Circuit Judge.

KENNEDY, Circuit Judge.

In this trademark infringement case, defendants Elvisly Yours, Inc., Elvisly Yours, Ltd., an English corporation, and Sid Shaw (collectively referred to as "Shaw") appeal the grant of summary judgment and entry of a permanent injunction in favor of plaintiff Elvis Presley Enterprises, Inc. ("EPE"). The District Court held that EPE was entitled to prevail on its claims of infringement of state and federal trademarks and its claim of violation of EPE's common law and statutory rights of publicity. The District Court also rendered judgment in favor of EPE on Shaw's counterclaims against EPE. Shaw asserts three errors: (1) the District Court denied Shaw's asserted equitable defenses of acquiescence and laches without allowing sufficient discovery to enable Shaw to effectively rebut EPE's summary judgment motion; (2) the District Court *sua sponte* granted summary judgment on Shaw's supplemental counterclaim; and (3) the scope of the injunction is too broad. We AFFIRM except with respect to the scope of the injunction. We REMAND to the District Court with directions to modify the injunction.

## I.

EPE is the assignee of state and federal trademarks, service marks, copyrights, and identification (publicity) rights of the Estate of Elvis Presley, variously in the names of Elvis, Elvis Presley, or the likeness of Elvis Presley. EPE licenses the use of these rights to a variety of users. Shaw sells Elvis Presley memorabilia in England and the United States, and claims to have done so in England since 1978 and the United States since 1980. Shaw is not licensed by EPE to use any of the trademark, copyright, or publicity rights of EPE.

In February 1985, EPE filed a complaint against Shaw for trademark infringement and unfair competition, seeking money damages and injunctive relief. Shaw denied infringement, asserting the defenses of prior use, laches and acquiescence. Shaw also counterclaimed for cancellation of EPE's federally registered marks. This matter first came before this Court in early 1987, upon denial of EPE's request for preliminary injunctive relief. This Court found it likely that EPE would succeed on the merits and was entitled to a preliminary injunction. *See Elvis Presley Enter., Inc. v. Elvisly Yours, Inc., et al.*, No. 85-5767 (6th Cir. April 28, 1987) [817 F.2d 104 (table)].

On May 4, 1987, EPE amended its complaint to add claims for violations of EPE's common law and statutory rights of publicity. On September 10, 1987, EPE sought summary judgment on all its claims as well as Shaw's counterclaims. In December 1987, Shaw filed a supplemental counterclaim, seeking damages as a result of a letter sent by EPE to an English company notifying the latter of the trademark litigation involving EPE and Shaw. On December 22, 1987, EPE moved for summary judgment on Shaw's supplemental counterclaim.

Meanwhile, during the course of discovery many disputes arose which required resolution by the District Court. In September 1987, Shaw deposed Joseph Hanks, a director of EPE. During the course of the deposition EPE's counsel objected to certain questions on the grounds of relevancy and advised Hanks not to answer them. Those questions related to activities of Elvis Presley individually, EPE, and other companies associated with the licensing and exploiting of the Elvis Presley persona. Shaw filed a Motion to Compel Discovery, claiming that answers to the questions were relevant to substantiate his claims of prior use and his defenses of laches and acquiescence.

Shaw also sought to depose Priscilla Presley, the former wife of Elvis Presley and also President and a director of EPE. EPE objected to this request and sought a protective order under Federal Rule of Civil Procedure 26(c). EPE contended that Ms. Presley had virtually no personal knowledge of the facts giving rise to this litigation, and that the purpose of the deposition was to annoy and harass her.

The magistrate to whom discovery disputes were referred ruled that Shaw's motion to compel Hanks to answer questions was well taken and that EPE's motion for a protective order was not. He ordered that Ms. Presley's deposition be taken and that Hanks' deposition be reconvened and that he answer the objected to questions. The District Court later reversed these two rulings. As to the Priscilla Presley deposition, the court concluded that "no useful purpose would be served by any deposition of Ms. Presley." Ms. Presley had filed an affidavit subsequent to the magistrate's decision, attesting that she had no personal knowledge of the facts giving rise to the litigation with Shaw.

As to the Hanks deposition, the District Court found the areas covered by the objectionable questions to be "irrelevant and immaterial" since it was clear that EPE had superior rights in the trademarks and publicity rights being litigated. The District Court's order resolving the discovery motions was issued on May 15, 1989.

On May 22, 1990, the District Court granted summary judgment in favor of

EPE[1] on the claims of federal and state trademark violations and violations of Tennessee common law and statutory rights of publicity. A permanent injunction was issued. Judgment in favor of EPE was also granted with respect to all of Shaw's counterclaims. The only matter not adjudicated by the District Court was EPE's claim for money damages.

Shaw appeals, raising three issues. First, Shaw claims that the District Court abused its discretion in denying the discovery requests with respect to Priscilla Presley and Joseph Hanks, the denials having prevented Shaw from being able to effectively oppose EPE's summary judgment motion. Second, Shaw argues that the District Court erred by granting summary judgment in favor of EPE on Shaw's supplemental counterclaim. Shaw claims that EPE did not move for summary judgment on that claim and the court improperly granted judgment *sua sponte.* Third, Shaw contends that even if judgment for EPE was proper, the injunction which issued is overbroad. We deal with these claims in turn.[2]

## II.

■ Summary judgment must be entered against a party who fails, after adequate time for discovery, to establish the existence of an element essential to a party's case, and on which a party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). As the Supreme Court explained in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), a dispute about a material fact is "genuine" only if "the evidence is such that a reason-

able jury could return a verdict for the nonmoving party."

In this case Shaw claims that laches and acquiescence are equitable defenses to EPE's infringement action. Shaw implicitly concedes that insufficient evidence was produced to require denial of EPE's summary judgment motion. Instead, Shaw contends that the District Court committed reversible error by limiting discovery, thereby preventing Shaw from producing evidence necessary to establish genuine issues of fact regarding the claimed equitable defenses.

■ Mindful of the burden on the nonmoving party to produce evidence showing the existence of a genuine issue of material fact, summary judgment should not be granted unless the nonmoving party has had the opportunity to discover information essential to opposition. *Routman v. Automatic Data Processing, Inc.,* 873 F.2d 970, 971 (6th Cir.1989); *Anderson,* 477 U.S. at 250 n. 5, 106 S.Ct. at 2511 n. 5; *see* Fed.R. Civ.P. 56(f). The need to allow adequate discovery is not without limits, however, and a trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant. *See Ghandi v. Police Dep't. of Detroit,* 747 F.2d 338, 354 (6th Cir.1984), *cert. denied,* 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 861 (1988). In reviewing the District Court's decision to limit discovery, this Court will intervene only if it was an abuse of discretion resulting in substantial prejudice. *Id.; Emmons v. McLaughlin,* 874 F.2d 351, 356–57 (6th Cir.1989) (it is within the district court's discretion to grant additional time for discovery, and it is the nonmoving party's burden to demonstrate need for more time under Federal Rule of Civil Procedure 56(f)).

1. Pursuant to a stipulation from the parties, on October 4, 1990, the District Court granted relief from that judgment and entered a new judgment clarifying its earlier action.

2. Shaw asserts that he "is not questioning trademark and right of publicity rights, but rather Shaw's right to complete discovery about [sic] his equitable defenses to rebut EPE's [summary judgment] motion." We understand from Shaw's argument that he is not contesting that

EPE has established superior rights in the marks in question, nor that there is a likelihood of confusion between Shaw's products and those created or licensed by EPE, nor that EPE is entitled to exclusive use of the trademarks and publicity rights in the United States absent some equitable defense. These holdings of the District Court are consistent with our earlier decision in this case. *See Elvis Presley Enter.,* No. 85–5767, slip op. at 2, 3, 5.

Shaw claims that if further discovery had been permitted he may have been able to show a genuine issue of material fact regarding the following issues relevant to his asserted equitable defenses of laches and acquiescence: (1) What action did EPE take to protect its marks? (2) Did EPE allow Shaw to use EPE's trademarks and publicity rights without interference? EPE contends that these issues are either not material to the disposition of this case or there exists no genuine dispute as to such issues. We agree with EPE.

## III.

### A. EPE's Enforcement Activities Against Others

■ Shaw asserts that there is a genuine issue concerning what actions EPE took to protect its trademarks and publicity rights. According to Shaw, he was precluded from more fully exploring this issue by the District Court's limitations on discovery. To the extent that Shaw was precluded from inquiring into EPE's and its predecessors' pursuit of infringers other than Shaw, such information is irrelevant. A plaintiff's failure to assert trademark rights against third parties is not relevant to the defenses of laches or acquiescence. *See* 4 R. Callmann, *Unfair Competition, Trademarks & Monopolies* § 22.28, at 137 (4th ed. 1983 & 1990 Supp.) (collecting cases). Further, Shaw has never contended that EPE or its predecessors "abandoned" the trademark, copyright, or publicity rights at issue. The District Court did not abuse its discretion in limiting discovery on this issue, which is not relevant in this case.

### B. Laches and Acquiescence

■ Although sometimes used indiscriminantly as if they were synonyms, "laches" and "acquiescence" are not the same. Laches is a negligent and unintentional failure to protect one's rights while acquiescence is intentional. Acquiescence requires "a finding of conduct on the plaintiff's part that amounted to an assurance to the defendant, express or implied, that plaintiff would not assert his trademark

rights against the defendant." *Sweetheart Plastics, Inc. v. Detroit Forming, Inc.,* 743 F.2d 1039, 1046 (4th Cir.1984) (citations omitted). Respecting laches, in this Circuit there is a strong presumption that a plaintiff's delay is reasonable so long as the analogous statute of limitations has not elapsed. *See Tandy Corp. v. Malone & Hyde, Inc.,* 769 F.2d 362, 365–66 (6th Cir. 1985), *cert. denied,* 476 U.S. 1158, 106 S.Ct. 2277, 90 L.Ed.2d 719 (1986). Shaw has not claimed that any analogous state limitations period had run before this suit was started. Therefore, Shaw must articulate "compelling reasons" in support of his laches claim. *Id.* at 366. In advancing such reasons, more is necessary than the ordinary requirement of showing unreasonable delay and prejudice to the defendant. "[I]n trademark litigation, ... some affirmative conduct in the nature of estoppel ... or conduct amounting to 'virtual abandonment' ... is necessary." *Id.* at 366 n. 2. (citations omitted). The question then is whether Shaw was precluded from obtaining evidence which could have established a genuine dispute about a fact material to either of his claimed defenses.

■ We find no abuse of discretion in the District Court's order denying the deposition of Priscilla Presley. Shaw claims that Ms. Presley may have had knowledge about whether the Presley Estate and then EPE allowed others, including Shaw, to use the Presley rights without interference. However, Ms. Presley had submitted an affidavit stating that she had no knowledge of Shaw's activity prior to the filing of the action. Only actions with respect to Shaw would be relevant to Shaw's claimed defenses. Furthermore, Ms. Presley's affidavit also provided some evidence that Shaw's primary purpose in deposing her would be to harass and annoy her. Taking these factors into consideration, the District Court acted within its discretion in denying the deposition of Ms. Presley.

■ Shaw similarly claims that Joseph Hanks may have had information regarding enforcement practices of the Presley Estate and EPE both generally and with respect to Shaw. Even if Hanks did have

information regarding Shaw specifically, which might be relevant, it does not follow that such information would also be "material." A failure of proof concerning an essential element of Shaw's case renders all other facts immaterial. As explained above, in order to establish his defense of laches, Shaw must show estoppel.[3] EPE argues that Shaw is unable to establish elements of an estoppel claim which are unrelated to the type of information Shaw claims he might have gotten from Hanks. We agree.

 Under Tennessee law, estoppel is not favored and it is the defendant who has the burden of proving every element of an estoppel. *Bokor v. Holder*, 722 S.W.2d 676, 680 (Tenn.Ct.App.1986). As a basis for equitable estoppel, the party invoking the estoppel must have acted in reliance on the actions of the other party, with the result that the party seeking to invoke estoppel be injured by his own conduct without the estoppel. *Morristown Furniture Co. v. People's Nat'l Fire Ins. Co.*, 149 Tenn. 214, 217–18, 259 S.W. 539 (1924). Finally, a party claiming the benefit of an equitable estoppel must have proceeded with the utmost good faith. *Induct–O–Matic Corp. v. Inductotherm Corp.*, 747 F.2d 358, 367 (6th Cir.1984); *Frankfort Land Co. v. Hughett*, 137 Tenn. 32, 50, 191 S.W. 530 (1917).

 Application of the controlling legal principles demonstrates that Shaw cannot establish the elements of estoppel, irrespective of what he might have learned from Joseph Hanks about trademark enforcement measures taken by EPE. The record is clear that Shaw understood that EPE possessed the rights in question and intended to enforce them. In early 1982, The Presley Estate had engaged in an effort to cancel a registration by Shaw of a trademark, "Elvisly Yours," in the Trademark Office of England. Later in 1982, when EPE learned of the formation by Shaw of Elvisly Yours, Inc., in Tennessee, EPE advised Shaw that it considered the intended activities of Elvisly Yours, Inc. to be violative of EPE's trademark and common law rights. Subsequent to receiving the cease and desist letter from EPE, Shaw sought on at least two occasions to obtain a license from EPE in order to sell "Elvis" merchandise. Shaw thus fully realized the need to obtain EPE's approval in order to legally engage in the commercial exploitation of Elvis Presley.

Despite his knowledge of EPE's rights, Shaw continued to sell "Elvis" merchandise after receiving EPE's cease and desist letter and after having unsuccessfully sought a license. Shaw's conduct demonstrates an absence of the utmost good faith necessary to establish an equitable estoppel defense. *See Induct–O–Matic*, 747 F.2d at 367; *Frankfort Land*, 137 Tenn. at 50, 191 S.W. 530; *see also Church of God*, 193 Tenn. at 595, 247 S.W.2d 63 ("[T]he doctrine of laches does not apply where defendant has acted in open and known hostility to plaintiff's rights and has been misled by no apparent acquiescence on plaintiff's part."). Nothing that Shaw might have learned from Joseph Hanks would affect the result on this essential issue.

 Shaw's knowledge that EPE intended to enforce its rights against Shaw also defeats the "acquiescence" defense. Shaw argues that EPE's actions toward other seller's of Elvis Presley merchandise led him to believe that EPE would not object to Shaw's peddling of Elvis goods. Even if this be true, it is not relevant. Acquiescence focuses on a plaintiff's acts toward *the defendant* and Shaw would need to show that EPE's conduct toward Shaw amounted to an assurance that EPE would not assert EPE's trademark and

---

**3.** Tennessee law regarding the equitable defenses of laches and acquiescence is virtually identical to the law of this Circuit. *See Church of God v. Tomlinson Church of God*, 193 Tenn. 583, 595, 247 S.W.2d 63 (1952) (laches alone will not be enough to prevent injunctive relief; defendant must show conduct which constitutes abandonment of the right or conduct establish-

ing an estoppel); *State ex rel. Elvis Presley Int'l Memorial Found. v. Crowell*, 733 S.W.2d 89, 100–101 (Tenn.Ct.App.1987) ("The doctrine of laches involves an owner's negligent, inexcusable delay in protecting its rights" and "is based upon the doctrine of equitable estoppel." (citations omitted)). While abandonment will suffice, Shaw has not made such a claim.

common law rights. Shaw attempts to meet this requirement by claiming that the Graceland Gift Shop, operated by EPE, had purchased a small quantity of unlicensed "Elvis" goods from Shaw. However, Shaw does not allege that the Graceland personnel knew that the goods were unlicensed or in any sense assured Shaw that EPE would not enforce its trademark and common law rights. In any event, it was very soon after Shaw's sale to Graceland that EPE sent the cease and desist letter, making clear that EPE intended to enforce its rights.[4] Furthermore, because only those acts which were directed at Shaw are relevant to Shaw's acquiescence defense, Shaw could not have "discovered" facts material to his acquiescence defense from Joseph Hanks. In other words, by definition, Shaw must already have knowledge of the specific actions taken by EPE which Shaw contends amount to the assurances that will make out an acquiescence defense.

■■■ Because Shaw cannot establish the essential elements of his estoppel or acquiescence claims as to which Joseph Hanks' testimony would not pertain, the District Court did not abuse its discretion in refusing to compel answers from Hanks. *Cf. Chilingirian v. Boris*, 882 F.2d 200, 203 (6th Cir.1989) (summary judgment is proper despite no opportunity for discovery as there was no showing that discovery would have disclosed disputed material facts). In sum, Shaw has not shown how he was prejudiced by the District Court's discovery rulings and we find that he was afforded the necessary "ample opportunity for discovery," *Anderson*, 477 U.S. at 250 n. 5, 106 S.Ct. at 2511 n. 5, before the District Court ruled on EPE's summary judgment motions.

### IV.

Shaw also claims that the District Court granted summary judgment on his supplemental counterclaim *sua sponte* and that it

was erroneous to do so, citing to *Routman*, 873 F.2d at 972. In *Routman*, this Court held that a court should not enter *sua sponte* summary judgment without notice to the losing party. We find no merit to Shaw's claim here. Shaw's supplemental counterclaim was filed in early December 1987. EPE filed a motion to dismiss or for summary judgment along with a supporting memorandum relating to that claim on December 22, 1987. Almost eighteen months later summary judgment was granted.

### V.

Finally, Shaw maintains that the permanent injunction issued by the District Court is overbroad. The relevant terms of the injunction are as follows:

> Elvisly Yours, Inc., Sid Shaw and Elvisly Yours, Ltd., ... and all persons acting in concert or participation with the defendants, are permanently enjoined from using the name, likeness and image of Elvis Presley or any trademarks of the plaintiff or any trademarks confus[ing]ly similar thereto for any purpose whatsoever, including the sale, distribution, marketing, advertising and licensing of goods or services.

Aside from its numerous federal and state trademarks, EPE has exclusive rights to commercially exploit the name, likeness and image of Elvis Presley. *Crowell*, 733 S.W.2d 89.

■■■ The protection afforded by a trademark "is not limited to goods specified in [a] registration, but goes to any goods which are 'likely to cause confusion' in the public's mind." *Atlas Supply Co. v. Atlas Brake Shops, Inc.*, 360 F.2d 16, 18 (6th Cir.1966); *Hindu Incense v. Meadows*, 692 F.2d 1048, 1050–51 (6th Cir.1982). In this action, Shaw admitted using the same marks on the same types of goods in the same channels of trade to the same customers as does EPE. Shaw does not appeal

---

**4.** This case is clearly distinguishable from *Crowell*, 733 S.W.2d 89, which is relied upon by Shaw. There the court reversed summary judgment against an asserted equitable defense. In that case there was evidence that EPE was aware for over four years that the defendant was using Elvis Presley's name, that EPE actively encouraged such use, and that the defendant relied upon EPE's apparent acquiescence to its detriment. *See id.* at 101.

the District Court's finding that there is a likelihood of confusion when Shaw uses EPE's trademarks. Similarly, EPE's right of publicity is broad. It prohibits an infringer from using the name, likeness and image of Elvis Presley for a commercial purpose. Accordingly, the District Court did not err in extending the injunction to cover any goods or services using EPE's trademarks and publicity rights.

The part of the District Court's order prohibiting Shaw from using the trademarks "for any purpose whatsoever" is too broad insofar as it covers more than the unauthorized commercial use or exploitation of EPE's rights. There are various activities that Shaw could engage in that would not violate EPE's legitimate trademark and publicity rights, such as writing a magazine article or book about Elvis Presley or dealing in properly licensed products. The injunction should be limited so as to prohibit Shaw's unauthorized use of the publicity rights or trademarks of EPE for commercial purposes. Further, the injunction should be limited to the United States and its possessions.

The portion of the District Court's judgment permanently enjoining Shaw shall be modified to read as follows:

> That judgment is entered ordering and adjudging that Elvisly Yours, Inc., Sid Shaw and Elvisly Yours, Ltd., their officers, agents, servants, employees, or any of them, and all persons acting in concert or participation with the defendants, are permanently enjoined from using the name, likeness and image of Elvis Presley or any trademarks of the plaintiff or any trademarks confusingly similar thereto, for the purposes of the sale, distribution, marketing, advertising and licensing of unauthorized goods or services in the United States and its possessions and territories.

## VI.

For the foregoing reasons, as modified herein the judgment of the District Court is AFFIRMED except with respect to the language of the injunction. The action is REMANDED to the District Court with instructions to modify the injunction in accordance with this opinion.