IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 22, 2002

## JACK CHARLES BLANKENSHIP v. DONAL CAMPBELL, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 00-2347-II    Carol L. McCoy, Chancellor**

**No. M2001-01014-COA-R3-CV - Filed October 20, 2003**

This appeal involves a dispute between a prisoner and the Tennessee Department of Correction regarding the prisoner's sentence credits and eligibility for parole. The prisoner filed a petition for declaratory judgment in the Chancery Court for Davidson County requesting the correction of his sentence and an immediate parole hearing. The Department filed a motion for summary judgment based on laches. When the prisoner failed to respond to the motion, the trial court granted the summary judgment in accordance with Davidson County Local R. 26.04(c), (f). Thereafter, the trial court denied the prisoner's motion to set aside the summary judgment, and the prisoner has appealed. We have determined that the summary judgment must be vacated because the Department's motion and supporting affidavit do not demonstrate that it is entitled to a judgment on its laches defense as a matter of law.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Edwin C. Lenow, Memphis, Tennessee, for the appellant, Jack Charles Blankenship.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Dawn Jordan, Assistant Attorney General, for the appellees, Donal Campbell and Don Sundquist.

**OPINION**

**I.**

Jack Charles Blankenship is a career criminal who has spent most of his life in the custody of the Tennessee Department of Correction. His first run-in with the law was in 1962 when a federal court in Arkansas found him guilty of violating the Dyer Act for stealing an automobile. He was sentenced to probation for the remainder of his minority. Once he became an adult, Mr. Blankenship headed full speed down the path of crime.

In August 1963, Mr. Blankenship pleaded guilty to petit larceny for stealing another automobile and was sentenced to three years at the Shelby County Penal Farm. He escaped four

months later and was recaptured in Mississippi. He pleaded guilty to escape, and in March 1964, he received a one-year sentence to be served consecutively to the remainder of his petit larceny sentence. Mr. Blankenship was paroled in December 1965, but his freedom was short-lived. After he stole a television, a phonograph, and another automobile, he pleaded guilty to two counts of petit larceny and received a one to three-year sentence. His parole was revoked, and he was required to serve his new sentences concurrently with his prior sentences. Mr. Blankenship was again paroled in December 1968, and his sentences expired in September 1969.

In April 1970, Mr. Blankenship was again convicted of petit larceny for stealing two automobiles and a purse. After receiving an early release, Mr. Blankenship went on a crime spree that resulted in five new convictions in June 1972.[1] The five sentences were ordered to be served concurrently. Mr. Blankenship was paroled for the third time in October 1974.

In early 1975, Mr. Blankenship pleaded guilty to voluntary manslaughter and received a two to five-year sentence. In April 1977, he was transferred to the Memphis Community Release Center. Mr. Blankenship escaped from the center two weeks after his arrival. Thereafter, he committed an armed robbery and a murder. These offenses led to convictions for armed robbery, first degree murder, and being a habitual criminal. Mr. Blankenship pleaded guilty to avoid a possible death sentence and received two concurrent life sentences.[2] These sentences were ordered to be served consecutively to the remainder of his sentence for voluntary manslaughter.

The State of Tennessee arranged for Mr. Blankenship to serve a portion of his state sentence at the Washington State Penitentiary in Walla Walla, Washington. He escaped from the Washington State Penitentiary in August 1980 and, upon his capture, was returned to Tennessee. He again escaped from the Department's custody in May 1981 this time by sawing through the bathroom window on a bus that was transferring him to the Tennessee State Prison. He was apprehended six days later in Arkansas after leaving the scene of a traffic accident caused by his intoxication.

Mr. Blankenship has been continuously in the State's custody since 1981; however, his criminal conduct has not abated. In January 1984, a jury in Morgan County convicted him of a series of crimes committed while he was incarcerated at the Brushy Mountain Correctional Complex. He received two four to ten-year sentences for two counts of voluntary manslaughter, three two to five-year sentences for felonious assault, a twenty-year sentence for aggravated kidnaping, and a fifty-year sentence for second-degree murder. The sentencing court ordered that these sentences be served concurrently with each other and with Mr. Blankenship's prior sentences. In July 1984, Mr. Blankenship pleaded guilty to assault with intent to commit murder, and the Criminal Court for Davidson County imposed a five-year sentence to be served consecutively to his other sentences.

In the early 1990s, Mr. Blankenship initiated an unsuccessful post-conviction attack on his guilty pleas throughout the years. In July 2000, he filed a petition for a declaratory judgment in the Chancery Court for Davidson County, alleging (1) that the Department had wrongfully taken away

---

[1]Mr. Blankenship received one to five years for one count of petit larceny and two counts of attempting to commit a felony. In addition, he received two three to five-year sentences for two counts of third-degree burglary.

[2]*Blankenship v. State*, 858 S.W.2d 897, 900 (Tenn. 1993).

1,256 days of accrued good and honor time from his 1972 convictions, (2) that the Department had erroneously listed his life sentence for murder as running consecutively to his other life sentences, and (3) that his 1984 conviction for assault with intent to commit murder remained "unprocessed" even though he had "executed a waiver stating that this sentence could be processed at the proper time." He requested that the trial court order the Department to correct its calculations of his sentence and grant him an immediate parole hearing.

The Department chose not to address Mr. Blankenship's claims on the merits. Instead, the Department filed a motion for summary judgment asserting that Mr. Blankenship was not entitled to a declaratory order under Tenn. Code Ann. § 4-5-225 (1998) because he had not yet sought a declaratory order from the Department and been turned down, as required by subsection (b) of the statute.[3] Three months later, the Department filed a motion to dismiss or for summary judgment seeking dismissal of the Commissioner of Correction and the Governor as parties, and requesting dismissal of Mr. Blankenship's entire claim based on laches. Mr. Blankenship did not respond to the Department's motion, and on April 5, 2001, the trial court granted the Department's motion and dismissed Mr. Blankenship's petition. Mr. Blankenship simultaneously filed a notice of appeal and a motion to set aside the summary judgment. The trial court denied the motion to set aside the judgment, and Mr. Blankenship has appealed this ruling as well.

## II.
### MR. BLANKENSHIP'S PROCEDURAL GROUNDS FOR SETTING ASIDE
### THE SUMMARY JUDGMENT

We turn first to Mr. Blankenship's claim that the trial court erred by declining to set aside the summary judgment entered on April 5, 2001. He asserts that the trial court could not have granted the summary judgment because his discovery requests had not been answered, and because his lawyer was "unaware that the Chancery Court of Davidson County required a written motion to continue the Motion for Summary Judgment." We find both arguments unpersuasive.

Mr. Blankenship's lawyer filed an affidavit in support of the motion to set aside the summary judgment. In the affidavit, he said he sent interrogatories and a request for production of documents to the Department on January 16, 2001, and the requests had not been complied with by the March 23, 2001 hearing date, and he needed this discovery to enable him to respond to the Department's motion. In addition, he asserted, in vague and non-specific terms, that statements by the Department's lawyer had left him with the "impression" that the summary judgment motion "was not going to be heard on March 23, 2001, pending my discovery requests."

In its opposition, the Department disputed Mr. Blankenship's attorney's claim that the Department had not responded to the discovery requests prior to the hearing. The Department attached a copy of the discovery responses, dated February 14, 2001, to its opposition. The

---

[3]The Department supported its motion with an affidavit by a legal assistant in its Office of General Counsel stating that a search of the Department's records failed to find any petition for declaratory order filed by Mr. Blankenship. In his response, Mr. Blankenship asserted that he had, in fact, filed a petition for a declaratory order, and he attached a notarized copy of his petition as proof. The trial court did not resolve this dispute, and we need not address it here, because the Department apparently abandoned this defense in the trial court.

Department also attached an affidavit from a staff member who asserted that she had delivered the discovery responses to Federal Express in a properly addressed envelope on February 14, 2001. The Department also attached a letter from Federal Express confirming that it had delivered the documents to the office of Mr. Blankenship's attorney the following day, February 15, 2001. Thus, Mr. Blankenship's attorney had the Department's discovery responses in hand more than a month before the date on which the hearing was set. In light of this fact, Mr. Blankenship's argument that he was unable to respond to the Department's motion effectively because the Department had not yet responded to his discovery requests borders on the frivolous.

Mr. Blankenship's lawyer also complains that he was "unaware" that the trial court would not continue the hearing on the motion for summary judgment without a written motion. This argument is somewhat puzzling for two reasons. First, a written motion is the only conceivable way that the trial court would have known that Mr. Blankenship desired to continue the March 23, 2001 hearing. Second, Mr. Blankenship's lawyer has no one to blame but himself for his failure to appear at the March 23, 2001 hearing. Mr. Blankenship's lawyer had a responsibility, before skipping the scheduled hearing, to verify for himself that the hearing had actually been continued and that any necessary procedures to obtain a continuance had been followed. Furthermore, in spite of the fact that his client was facing a well supported, case-dispositive summary judgment motion,[4] Mr. Blankenship's lawyer failed to file any response to the motion whatsoever prior to the scheduled hearing date. Having done so, Mr. Blankenship's lawyer knew full well that he and his client had no right to expect the trial court to hold further hearings on the matter before ruling on the motion.[5]

### III.
#### THE DEPARTMENT'S LACHES DEFENSE

We turn now to Mr. Blankenship's claim that the trial court erred in granting the Department a summary judgment because the Department failed to meet the requirements of Tenn. R. Civ. P. 56.04. Mr. Blankenship is correct that his attorney's failure to respond to the summary judgment motion and to show up at the hearing on it did not give the trial court carte blanche to grant the summary judgment motion without first determining that the Department had met all the requirements of Tenn. R. Civ. P. 56. Mr. Blankenship argues that the Department failed to establish its affirmative defense of laches because it did not demonstrate prejudice to the Department resulting from a delay on the part of Mr. Blankenship in filing his petition for a declaratory judgment. We agree that the Department has not established the element of prejudice and was therefore not entitled to summary judgment.

---

[4] It is common knowledge among Tennessee trial attorneys that a party faced with a properly supported summary judgment motion cannot rest on the mere allegations or denials in its pleadings. Tenn. R. Civ. P. 56.06; *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000); *Fowler v. The Happy Goodman Family*, 575 S.W.2d 496, 498 (Tenn. 1978); *Butler v. Madison County Jail*, 109 S.W.3d 360, 365 (Tenn. Ct. App. 2002).

[5] The Local Rules of Practice and the Department's summary judgment both warned that if no response was filed by the scheduled hearing date, the motion would be decided without any further hearings on the matter. *See* Davidson County Local R. 26.04 (c), (f).

While the affirmative defense of laches is addressed to the trial court's discretion,[6] the trial court's exercise of this discretion must conform to several fundamental principles. The first principle is that delay in asserting a claim, without more, cannot trigger application of the laches doctrine. *Parker v. Bethel Hotel Co.*, 96 Tenn. 252, 286, 34 S.W. 209, 217 (1896); *Nunley v. Nunley*, 925 S.W.2d 538, 542 (Tenn. Ct. App. 1996). The second principle is that laches can only be invoked against a party whose undue delay in pursuing its claim is negligent and without excuse. *Samuel v. King*, 158 Tenn. 546, 548, 14 S.W.2d 963, 964 (1929); *Wilson v. Wilson*, 58 S.W.3d 718, 729 (Tenn. Ct. App. 2001). The third principle is that the party invoking the doctrine must demonstrate that it has actually been prejudiced by the claimant's delay in asserting its claim. *Brown v. Ogle*, 46 S.W.3d 721, 726 (Tenn. Ct. App. 2000); *Shell v. Law*, 935 S.W.2d 402, 410 (Tenn. Ct. App. 1996). Stated another way, the party invoking the doctrine must demonstrate some causal connection between its prejudice and the claimant's delay. *See Bernard v. Walker*, 186 Tenn. 617, 629, 212 S.W.2d 600, 605 (1948) (noting injury must have been "on account of" plaintiff's delay in asserting his rights).

Moreover, delay alone will not supply the prejudice needed to invoke the doctrine of laches. The party invoking the doctrine must show either that its ability to defend itself has been impaired by the delay, *Evans v. Steele*, 125 Tenn. 483, 494-95, 145 S.W. 162, 165 (1912); *Brown v. Ogle*, 46 S.W.3d at 726-27; *Baker v. Baker*, 24 Tenn. App. 220, 235-36, 142 S.W.2d 737, 747 (1940), that there has been a material change in disputed property, *McDonald v. Baldwin*, 24 Tenn. App. 670, 675-76, 148 S.W.2d 385, 388 (1941), or that intervening changes in the circumstances impair the court's ability to adjudicate the case fairly. *Needham v. Caldwell*, 25 Tenn. App. 189, 194-95, 154 S.W.2d 535, 538 (1941) (delay resulting in court's inability to return parties to status quo).

The courts sustain laches defenses only in rare cases. *S. M. Williamson & Co. v. Ragsdale*, 170 Tenn. 439, 449, 95 S.W.2d 922, 926 (1936); *Frye v. Postal Employees Credit Union*, 713 S.W.2d 324, 326 (Tenn. Ct. App. 1986). The doctrine has little application when the plaintiff's suit seeks to protect a vested legal right. *Church of God v. Tomlinson Church of God*, 193 Tenn. 583, 595, 247 S.W.2d 63, 68 (1952). Determining whether the doctrine applies requires a particularly fact-intensive inquiry. *State ex rel. Wilson v. Mays*, 190 Tenn. 156, 162, 228 S.W.2d 97, 100 (1950); *Hannewald v. Fairfield Cmtys., Inc.*, 651 S.W.2d 222, 228 (Tenn. Ct. App. 1983).

Because the Department used a motion for summary judgment to assert its laches defense, on appeal we must view the evidence in the light most favorable to Mr. Blankenship, and resolve all reasonable inferences in his favor. *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 507 (Tenn. 2001). Examined in this light, the Department's evidence does not demonstrate either that Mr. Blankenship delayed unduly in filing his petition for declaratory judgment or that the Department was prejudiced by his delay.

As we understand the Department's laches defense, Mr. Blankenship should be denied access to the courts because he is now questioning his "sentence structure," which includes convictions that were imposed in 1972 and because the Department converted from a manual to a computerized

---

[6] *John P. Saad & Sons, Inc. v. Nashville Thermal Transfer Corp.*, 715 S.W.2d 41, 46 (Tenn. 1986); *Barnes v. Fort*, 181 Tenn. 522, 533, 181 S.W.2d 881, 885 (1944).

record-keeping system between 1972 and 2000. While both of these facts are undeniably true, they fall far short of demonstrating that the Department's ability to respond to Mr. Blankenship's claims has been materially prejudiced.

Mr. Blankenship is making three claims in this case. First, he asserts that the Department has deprived him of 1,256 days of good and honor time without a hearing. Second, he insists the Department is requiring him to serve one or more sentences consecutively that were ordered by the sentencing court to be served concurrently. Third, he claims that the Department has failed to "process" his "sentence under 84W267" despite the fact that he executed a waiver on February 12, 1997. Nothing in the affidavit attached to the Department's motion explains how the computerization of the Department's sentence records undermines its ability to respond to these claims.

The Department has not specifically asserted that the records needed to respond to Mr. Blankenship's claims have been destroyed or are otherwise unavailable. At worst, the Department will be required to take more time to review the microfilmed and microfiched records that pertain to the issues Mr. Blankenship has raised. Administrative inconvenience does not rise to the sort of prejudice required to support a laches defense. We declined in an earlier appeal to address the Department's laches defense because we determined that the Department had produced sufficient evidence to rebut the prisoner's claim that the Department had wrongfully withheld sentence reduction credits. *Streeter v. Tennessee Dep't of Corr.*, No. M1999-02267-COA-R3-CV, 2000 WL 1231382, at *4 (Tenn. Ct. App. Aug. 31, 2000) (No Tenn. R. App. P. 11 application filed). In this case, the Department has not demonstrated that it will be unable to produce the same sort of evidence it produced to good effect in the *Streeter* case.

## IV.

We take no delight in siding with an individual who has done so much to menace the citizens of this State, his fellow prisoners, and the corrections officers. However, without evidence of prejudice, the Department has failed to establish an essential element of its laches defense, and thus the trial court erred by invoking the doctrine of laches to dismiss Mr. Blankenship's petition summarily. Accordingly, we vacate the summary judgment and remand the case to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal to the Tennessee Department of Correction.

_____
WILLIAM C. KOCH, JR., J.

-6-