IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 8, 2024

## KISHA DEAN TREZEVANT v. STANLEY H. TREZEVANT, III

**Appeal from the Circuit Court for Shelby County**
**No. CT-003516-13  Mary L. Wagner, Judge**
_____

**No. W2023-00682-COA-R3-CV**
_____

This is a post-divorce criminal contempt case.  The trial court found Appellant guilty of four counts of criminal contempt based on Appellant's violations of the trial court's order. Discerning no error, we affirm.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and W. NEAL MCBRAYER, J., joined.

Stevan L. Black and Vickie Hardy Jones, Memphis, Tennessee, for the appellant, Stanley H. Trezevant, III.

Mitchell D. Moskovitz and Adam N. Cohen, Memphis, Tennessee, for the appellee, Kisha Dean Trezevant.

**OPINION**

## I. Background

This case comes to us on remand from the Tennessee Supreme Court.  *Trezevant v. Trezevant*, No. W2023-00682-SC-R11-CV, 2024 WL 3407466 (Tenn. July 8, 2024) ("*Trezevant SCt*").  In *Trezevant v. Trezevant*, No. W2023-00682-COA-R3-CV, 2024 WL 980755 (Tenn. Ct. App. Mar. 7, 2024), which was the third appeal in the case, we dismissed the appeal because Husband failed to properly designate his issues in the "Statement of the Issues" section of his brief, which omission we held was in violation of Rule 27(a)(4) of

the Tennessee Rules of Appellate Procedure. *Trezevant*, 2024 WL 980755, at *3-5. By per curiam order, the Tennessee Supreme Court remanded the case to us with instructions to consider the parties' substantive arguments. *Trezevant SCt*, 2024 WL 3407466, at *3. To that end, and in the interest of consistency, we restate the factual background as set out in our previous opinion. *Trezevant*, 2024 WL 980755, at *1-3.[1]

This is the third appeal in this divorce case that has been pending for over ten years. *See Trezevant v. Trezevant*, No. W2021-01153-COA-R3-CV, 2024 WL 352896 (Tenn. Ct. App. Jan. 31, 2024) ("*Trezevant II*"); *Trezevant v. Trezevant*, 568 S.W.3d 595 (Tenn. Ct. App. 2018) ("*Trezevant I*"). In the interest of judicial economy, we will discuss only those facts and proceedings that are relevant to this appeal.

Appellant Stanley Trezevant ("Husband") and Appellee Kisha Trezevant ("Wife") were married in September 1990. *Trezevant I*, 568 S.W.3d at 603. In August 2013, Wife filed a complaint for divorce in the Shelby County Circuit Court ("trial court"). *Id.* On March 1, 2017, the trial court entered the final decree of divorce, which was appealed to this Court. *Id.* at 604. In *Trezevant I*, this Court reviewed the trial court's: (1) identification, classification, valuation, and division of marital property; (2) conclusion that Husband dissipated marital assets during the divorce; and (3) conclusion that Husband should have been held in criminal contempt and sentenced to jail for same. On appeal, we affirmed the trial court's identification and classification of marital property and its conclusion that Husband dissipated marital assets. *Id.* at 641. We also affirmed the trial court's order holding Husband in criminal contempt. *Id.* We vacated the trial court's valuation and division of marital property as well as Wife's alimony awards and remanded the case to the trial court. *Id.*

Following this Court's remand, on January 5, 2021, the trial court entered its findings of facts and conclusions of law. *See Trezevant II*, 2024 WL 352896, at *4. Therein, the trial court made extensive findings of fact before dividing the marital estate between the parties. Part of the trial court's division included awarding Wife the "Cayman Island Properties" and the bank accounts associated with those properties. Pertinent to this appeal, the trial court ordered:

> 5. With regards to bank accounts associated with the Cayman Island [P]roperties, Husband shall not close the accounts, but instead shall add Wife as an owner to said account within fifteen (15) days of this Order. Husband shall not make any further withdrawals from the bank accounts associated with these properties. Thereafter, Wife, as an owner, shall have the authority to remove Husband from said bank accounts. Husband shall ensure that Seven Mile Beach Account ending in #10621 has a balance of at least $183,350.12. If it does not, Husband shall provide an accounting, including

[1] The Tennessee Supreme Court did not disturb this Court's recitation of the facts and procedural history.

supporting documentation, of all transactions within this account since August 31, 2020. Said accounting shall be provided within thirty (30) days of this Order. Any withdrawals for expenses other than reasonable and necessary business expenses shall be reimbursed to Wife by Husband within forty-five (45) days of this Order.

Following entry of the January 5, 2021 order, both parties filed motions to alter or amend. On September 1, 2021, the trial court entered an order on the respective motions. On December 15, 2021, the trial court entered its amended findings of facts and conclusions of law that modified a portion of its previous order that is unrelated to this appeal.

On September 30, 2021, Wife filed a petition for mandatory injunctive relief and for civil and criminal contempt ("Original Contempt Petition"). Therein, Wife alleged that Husband falsely claimed that he sold the Cayman Island Properties, which had been awarded to Wife. Wife asked the trial court to enjoin Husband from transferring, selling, or otherwise encumbering the properties that were awarded to her. To the extent Husband completed any transfers of the Cayman Island Properties, Wife asserted that Husband acted in knowing and willful violation of the January 5, 2021 findings of fact and conclusions of law. Thus, Wife asked the trial court to hold Husband in willful civil and criminal contempt of that order.

On February 3, 2022, Wife filed an amended petition for civil and criminal contempt ("Amended Contempt Petition"). Therein, Wife alleged, in pertinent part:

17. Husband has flagrantly violated each and every substantive tenant of Paragraph five (5) of the Ordering Section [of the January 5, 2021 findings of fact and conclusions of law]. To wit:

A. Husband has failed and refused to add Wife as an owner to any of the Cayman Island bank accounts; this includes Cayman National Bank Account ending #10621 . . . ;

B. Husband has closed the Cayman National Bank Account ending in #10621;

C. Husband has made withdrawals from Cayman National Bank Account ending in #10621. . . ;

D. Since Account #10621 has been closed by Husband in violation of [the trial court's order]; said account has no balance, which is obviously less than $183,350.12. Husband has failed and refused to provide an accounting, including supporting documentation, of all transactions within this

account since August 31, 2020. Said accounting was to have been provided within thirty (30) days of January 5, 2021.

E. Husband has also failed and refused to reimburse Wife for at least $183,350.12. He has also failed to reimburse Wife for any other non-business expenses from [this] Account within forty-five (45) days of [the] Order. In fact, by failing and refusing to provide Wife with the statements and the full accounting, Husband has deprived Wife entirely of the ability to determine what additional reimbursements are owed.

(Emphasis in original). Wife alleged these actions constituted a knowing and willful violation of the trial court's January 5, 2021 findings of fact and conclusions of law and asked the trial court to hold Husband in willful civil and criminal contempt.

On March 14, 2022, Husband filed a motion to bifurcate and for more definite statement asking Wife to clarify which counts in her petitions were criminal and which counts were civil. On April 1, 2022, Wife filed a response to Husband's motion and clarified that she was proceeding with criminal contempt charges against him for his: (1) failure to add Wife's name to account #10621; (2) closing of account #10621; and (3) non-business withdrawals from account #10621. On April 6, 2022, the trial court heard Husband's motion for a more definite statement. During that hearing, Husband's counsel stated that Wife's response set forth how she was "going to proceed . . . in the way of criminal contempt, so we now know the answer to our question, so we're in a position, as it relates to that issue, to proceed." On April 14, 2022, Husband filed an answer to the Amended Contempt Petition.

On November 3, 2022, the trial court entered a consent order setting for trial, *inter alia*, Wife's Original and Amended Contempt Petitions. In this order, the trial court found that Husband, "in lieu of a formal arraignment, enter[ed] a plea of not guilty and waive[d] a formal reading of the charges against him."

Three days before trial, Husband filed an amended and supplemental answer to the Amended Contempt Petition. On March 20, 2023, the trial court heard Wife's criminal contempt petitions. After close of Wife's proof, Husband made an oral motion for judgment of acquittal arguing that Wife failed to provide proper notice of the charges against him in the petitions for contempt. Husband also argued that Wife failed to initiate her contempt claims within the statute of limitations. On March 21, 2023, Husband filed a written motion for judgment of acquittal arguing these same issues.

On April 11, 2023, the trial court entered its order on Wife's criminal contempt petitions. Relevant here, the trial court found that the Amended Contempt Petition was not barred by the statute of limitations because it related back to her Original Contempt

- 4 -

Petition. The trial court also found that Husband not only received sufficient notice of the charges against him, but he knowingly waived his right to contest them. As to the criminal contempt charges, the trial court found Husband in contempt for: (1) failing to add Wife's name to Cayman National Bank Account #10621; (2) closing Cayman National Bank Account #10621; and (3) making three withdrawals from Cayman National Bank Account #10621. Based on the foregoing, the trial court sentenced Husband to forty (40) consecutive days of incarceration. The trial court stayed the sentence pending this appeal, after Husband posted a $40,000.00 cash bond and surrendered his passport. Husband filed a timely appeal.

## II. Issues

Husband raises four issues for review, as stated in his brief:

1. Whether the trial court erred in finding Husband guilty of criminal contempt for his alleged failure to add Wife's name to and closing Cayman National Bank account #10621 in the name of Seven Mile Beach Hotel Development Corp., Ltd.?

2. Whether the trial court erred in finding Husband guilty of criminal contempt for withdrawing the sum of $194,428.04 from Cayman National Bank account #10621 on January 22, 2021?

3. Whether the trial court erred in finding Husband guilty of criminal contempt for withdrawing the sum of $36,606.50 from Cayman National Bank account #10621 on January 28, 2021?

4. Whether the trial court erred in finding Husband guilty of criminal contempt for withdrawing the sum of $4,202.40 from Cayman National Bank account #10621 on January 22, 2021?

Wife raises the additional issue: "Is there a statute of limitations to act upon a domestic relations decree?"

## III. Standard of Review

We review a non-jury case "*de novo* upon the record with a presumption of correctness as to the findings of fact, unless the preponderance of the evidence is otherwise." ***Bowden v. Ward***, 27 S.W.3d 913, 916 (Tenn. 2000) (citing Tenn. R. App. P. 13(d)). The trial court's conclusions of law are reviewed *de novo* and "are accorded no presumption of correctness." ***Brunswick Acceptance Co., LLC v. MEJ, LLC***, 292 S.W.3d 638, 642 (Tenn. 2008). Because statutory interpretation is a question of law, we also review the trial court's interpretation of any statute *de novo* with no presumption of

correctness.  ***In re Estate of Tanner***, 295 S.W.3d 610, 613 (Tenn. 2009).

## IV.  Analysis

Husband argues that the trial court erred in finding him guilty of four counts of criminal contempt.  In its per curiam order, the Tennessee Supreme Court instructed this Court to consider the sub-argument headings in Husband's appellate brief to determine the exact issues he has presented for our review.  Having done so, we deduce that Husband's issues are: (1) whether the trial court incorrectly held that charges raised for the first time in Wife's Amended Contempt Petition "related back" to the date of the filing of the Original Contempt Petition; (2) whether there is a one-year statute of limitations that applies to misdemeanor prosecutions that the trial court should have applied to Wife's criminal contempt charges; (3) whether Wife's prosecution against Husband commenced before the one-year statute of limitations ran; (4) whether the one-year statute of limitations was tolled; (5) whether the one-year statute of limitations was waived; and (6) whether the charging instrument provided Husband with proper notice of the charges against him.  In his reply brief, Husband explicitly states that "[t]here is no issue pertaining to the sufficiency of the evidence in this criminal contempt matter."  Accordingly, evidentiary issues are not before this Court.

## A.  Nature of Contempt Proceedings

Before turning to the substantive arguments, we review the characteristics of contempt actions as well as the similarities and differences between civil and criminal contempt.  Contempt proceedings are unique and incidental to the case out of which they arise.  ***Doe v. Bd. of Prof'l Responsibility***, 104 S.W.3d 465, 474 (Tenn. 2003).  Under Tennessee Code Annotated section 29-9-102, our courts hold the power to inflict punishments for contempt of court when, *inter alia*, a party willfully disobeys or resists any order, rule, or decree of the court.  Tenn. Code Ann. § 29-9-102(3).  Contempt is not defined as a criminal offense under section 29-9-102.  Furthermore, while contempt proceedings are generally classified as "civil" or "criminal," they "are neither wholly civil nor criminal in nature and may partake of the characteristics of both."  ***Baker v. State***, 417 S.W.3d 428, 435 (Tenn. 2013).  Although our courts have the authority to punish both types of contempt with either a fine, a period of confinement, or both, *see* Tenn. Code. Ann. §§ 29-9-103, 104, whether a contempt proceeding is civil or criminal is determined by its character and purpose.  ***Gompers v. Buck's Stove & Range Co.***, 221 U.S. 418, 441 (1911).

Civil contempt is remedial and "brought to force compliance with the order and thereby secure private rights established by the order."  ***Baker***, 417 S.W.3d at 436 (citing ***Overnite Transp. Co. v. Teamsters Local Union No. 480***, 172 S.W.3d 507, 510 (Tenn. 2005)).  Accordingly, "[w]hen a trial court orders imprisonment after finding civil contempt, the confinement is remedial and coercive in nature, designed to compel the

contemnor to comply with the court's order." ***Baker***, 417 S.W.3d at 436. Thus, if a contemnor complies with the order, he or she will be immediately released from confinement. ***Id.*** (citing ***Overnite Transp. Co.***, 172 S.W.3d at 511).

As for criminal contempt, the Tennessee Supreme Court has explained that,

[t]hough criminal contempt has been regarded as a "crime" for some purposes, *see **Black*** [***v. Blount***, 938 S.W.2d 394, 402 (Tenn. 1996)], criminal contempt proceedings

> are not intended to punish conduct proscribed as harmful by the general criminal laws. Rather, they are designed to serve the limited purpose of vindicating the authority of the court. In punishing contempt, the Judiciary is sanctioning conduct that violates specific duties imposed by the court itself, arising directly from the parties' participation in judicial proceedings.

***Id.*** (quoting ***Young v. United States ex rel. Vuitton et Fils S.A.***, 481 U.S. 787, 800 [] (1987)).

***Baker***, 417 S.W.3d at 438. Indeed, sanctions for criminal contempt are "both punitive and unconditional in nature, designed to punish past behavior, not to coerce directly compliance with a court order or influence future behavior." ***Id.*** at 436. Accordingly, even if a contemnor complies with the order, he or she "cannot shorten the term [of confinement] by agreeing not to continue in the behavior that resulted in [such] confinement." ***Id.*** (citing ***Gompers***, 221 U.S. at 442).

There are certain substantial rights and constitutional privileges accorded to criminal defendants that are also afforded to criminal contemnors. These include: (1) the right to notice and to respond to the allegations against them, Tenn. R. Crim. P. 42(b); ***Cooke v. United States***, 267 U.S. 517, 537 (1925); ***State v. Maddux***, 571 S.W.2d 819, 821 (Tenn. 1978); (2) the presumption of innocence, to be proven guilty beyond a reasonable doubt, and that a contemnor cannot be compelled to testify against himself or herself, ***Gompers***, 221 U.S. at 444; ***Doe***, 104 S.W.3d at 474; ***State ex rel. Anderson v. Daugherty***, 191 S.W. 974, 974 (Tenn. 1917); (3) the right to an attorney and the right to have an attorney appointed. ***Cooke***, 267 U.S. at 536-37; ***Cottingham v. Cottingham***, 193 S.W.3d 531, 536 (Tenn. 2006); *see also* Tenn. Sup. Ct. R. 13, § 1 (d)(1)(B); and (4) that the double jeopardy provisions in the federal and state constitutions apply, ***Ahern v. Ahern***, 15 S.W.3d 73, 80 (Tenn. 2000); ***Moody v. Hutchison***, 159 S.W.3d 15, 27 (Tenn. Ct. App. 2004); ***State v. Wood***, 91 S.W.3d 769, 773 (Tenn. Ct. App. 2002).

Despite the foregoing, criminal contemnors are not afforded all rights given to criminal defendants. For example, "[c]ontemnors are not entitled to a jury trial if the

criminal contempt is not 'serious' enough to require the protection of the constitutional right to a jury trial." *Baker*, 417 S.W.3d at 437 (citing *Bloom v. Illinois*, 391 U.S. 194, 198 (1968)).[2]  Criminal contempt proceedings also do not require an indictment and prosecution by the State.  Tenn. R. Crim. P. 42; *Green v. United States*, 356 U.S. 165, 185-86 (1958), *overruled in part on other grounds by Bloom*, 391 U.S. at 196 n.1; *Wood*, 91 S.W.3d at 773 (recognizing that criminal contempt is not initiated by an indictment or presentment).  Indeed, "district attorneys generally do not prosecute criminal contempt proceedings based on Tennessee Code Annotated section 29-9-102 and have no mandatory duty to do so."  *Baker*, 417 S.W.3d at 437 (citing *Black*, 938 S.W.2d at 402 ("Tennessee law only requires district attorney generals to conduct prosecutions for 'conduct proscribed as harmful by the general criminal laws.'")).  As this Court has explained, "it is quite proper that the attorney for the opposing party in the underlying litigation pursue the [criminal contempt] charge."  *Long v. McAllister-Long*, 221 S.W.3d 1, 7 (Tenn. Ct. App. 2006). Furthermore, our Tennessee Supreme Court has explained that, under Tennessee Code Annotated section 29-9-102, "[c]ourts properly 'find' or 'hold' persons in contempt and impose 'sanctions' or 'punishment' for contempt but do not 'convict' persons of contempt."  *Baker*, 417 S.W.3d at 438 (citing *Long*, 221 S.W.3d at 12-13).  As such, post-conviction relief "is not available to challenge findings of general criminal contempt arising from civil cases."  *Baker*, 417 S.W.3d at 439.  "Rather, the Tennessee Rules of Civil Procedure provide the avenues for seeking relief from judgments in civil cases."  *Id.* (citing Tenn. R. Civ. P. 59, 60) (additional citation omitted).  This Court has also held that criminal contempt cases "do not trigger the due process mandates of [Tennessee Rule of Criminal Procedure] 37(c)(2) or Tennessee Code Annotated Section 40-14-307(a) to provide the indigent defendant with a verbatim transcript at the State's expense."  *State, ex rel. Creighton v. Creighton*, No. M2010-01171-COA-R3-CV, 2011 WL 1344638, at \*8 (Tenn. Ct. App. Apr. 7, 2011).

## B.  Statute of Limitations

We begin with the question of what, if any, statute of limitations applies in this case. Husband argues that Tennessee Code Annotated section 40-2-102(a), the statute of limitations for criminal misdemeanors, applies.  Section 40-2-102(a) provides that ". . . all prosecutions for misdemeanors shall be commenced within the twelve (12) months after the offense has been committed . . . ."  Tenn. Code Ann. § 40-2-102(a).  Husband argues that a charge of criminal contempt equates to a misdemeanor charge under our criminal

---

[2] Our Tennessee Supreme Court has noted that the United States Supreme Court has not expressly defined what constitutes a "serious contempt."  *Baker*, 417 S.W.3d at 437.  However, the United States Supreme Court "has repeatedly held that a jury trial is not required if the contempt is punished by confinement of six months or less."  *Id.* (citing *Taylor v. Hayes*, 418 U.S. 488, 496 (1974); *Cheff v. Schnackenberg*, 384 U.S. 373, 379-80 (1966); *cf. Bloom*, 391 U.S. at 211; *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 837-38 (1994)).  The Tennessee Supreme Court has explicitly held that a person charged with criminal contempt under Tennessee Code Annotated section 29-9-102 is not entitled to a jury trial. *Ahern*, 15 S.W.3d at 82.

statutes such that section 40-2-102 applies. In support of his contention, Husband cites Tennessee Code Annotated section 39-11-110, which provides that ". . . all violations of law punishable by fine or confinement for less than one (1) year, or both, are denominated misdemeanors." Tenn. Code Ann. § 39-11-110. The crux of Husband's argument is that, because criminal contempt is punishable by a fine, imprisonment, or both, not to exceed fifty dollars ($50.00) or ten (10) days, that criminal contempt qualifies as a misdemeanor offense. *See* Tenn. Code Ann. § 29-9-103.

Wife disagrees that section 40-2-102(a) governs the statute of limitations in this case. Rather, she argues that, because the criminal contempt charges arose out of a domestic relations order, *i.e.,* the January 5, 2021 order dividing the marital estate, that Tennessee Code Annotated section 28-3-110(e) applies. Section 28-3-110(e) provides that, ". . . there is no time within which a judgment or decree in a domestic relations matter issued by a court with domestic relations jurisdiction pursuant to title 36 must be acted upon, unless otherwise specifically provided for under title 36." Tenn. Code Ann. § 28-3-110(e).

It is well-settled that, when applying any statute, a court's duty is to ascertain and fully effectuate the "legislative intent [of the statute], taking care not to broaden [it] beyond its intended scope . . . ." *Womack v. Corr. Corp. of Am.*, 448 S.W.3d 362, 366 (Tenn. 2014) (citing *Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 420 (Tenn. 2013); *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009)). As the Tennessee Supreme Court has explained, "[o]ur analysis naturally begins with the words used in the statute," *Womack*, 448 S.W.3d at 366 (citing *Shore*, 411 S.W.3d at 420), and we must interpret those words under their "natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Id.* (quoting *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012)).

We turn first to our general contempt statute, Tennessee Code Annotated section 29-9-102, which provides:

> The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases:
>
> > (1) The willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice;
> >
> > (2) The willful misbehavior of any of the officers of such courts, in their official transactions;
> >
> > (3) The willful disobedience or resistance of any officer of the

- 9 -

> such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts;
>
> (4) Abuse of, or unlawful interference with, the process or proceedings of the court;
>
> (5) Willfully conversing with jurors in relation to the merits of the cause in the trial of which they are engaged, or otherwise tampering with them; or
>
> (6) Any other act or omission declared a contempt by law.

Tenn. Code Ann. § 29-9-102. As shown above, the language used in each subsection provides that courts may hold persons in contempt when they behave in such a way as ***to obstruct the administration of justice***. Importantly, there is no language in the above statute to show that the Legislature intended for courts to hold persons in contempt for ***violations of the general criminal laws***. Indeed, our courts have long held that the purpose of criminal contempt proceedings is not to punish a contemnor "for conduct proscribed as harmful ***by the general criminal laws***," ***Baker***, 417 S.W.3d at 437 (quoting ***Black***, 938 S.W.2d at 402), but ***to vindicate the authority of our courts*** for a contemnor's bad conduct "arising directly from the parties' participation in judicial proceedings." ***Id.*** (emphases added); *see also* ***Ahern***, 15 S.W.3d at 82. This distinction is important because section 39-11-110, on which Husband relies, applies only to "violations of law." Because a contemnor's contemptuous conduct is not a "violation of law," but rather an obstruction of the administration of justice, Tennessee Code Annotated section 39-11-110 does not apply to criminal contempt actions.[3] *See also* ***Brown v. Latham***, No. 01-A-01-9401-CV00008, 1994 WL 570102, at *1 (Tenn. Ct. App. Oct. 19, 1994), *aff'd*, 914 S.W.2d 887 (Tenn. 1996) (quoting ***State v. Howell***, 69 A. 1057, 1058 (Conn. 1908) ("Although criminal contempt is a crime, for constitutional purposes, it is not the same as a violation of the criminal law . . . . 'The proceeding in contempt is for an offense against the court as an organ of public justice, and not for a violation of the criminal law.'")). Indeed, criminal contempt charges should not be treated as misdemeanors under section 39-11-110.[4] Thus, the statute of limitations governing misdemeanors does not apply here. *See* Tenn. Code Ann. § 40-2-102(a).[5]

---

[3] We note that, by Husband's logic, a civil contempt charge would equate to a misdemeanor charge as it is also punishable by a fine, imprisonment or both. Allowing for such proposition would be contrary to the well-established law on contempt, discussed *supra*.

[4] Similarly, in ***State v. Wood***, this Court held that, because criminal contempt proceedings "are not fully criminal," such proceedings did not fall under Tennessee Code Annotated section 27-3-131 or Tennessee Rule of Criminal Procedure 5(c)(2), "which provide for misdemeanor appeals from the general sessions court to circuit or criminal court." 91 S.W.3d 769, 773 (Tenn. Ct. App. 2002).

[5] This Court is cognizant of a line of older United States Supreme Court cases stating that "criminal

Tennessee Code Annotated section 40-2-104 reinforces the inapplicability of sections 39-11-110 and 40-2-102(a) to criminal contempt charges. As noted above, section 40-2-102(a) provides that "all prosecutions for misdemeanors shall be commenced within the twelve (12) months after the offense has been committed." Tenn. Code Ann. § 40-2-102(a). Section 40-2-104 provides for how a prosecution for a misdemeanor is commenced within the meaning of the applicable chapter, to-wit: (1) by finding an indictment or presentment; (2) the issuing of a warrant; (3) the issuing of a juvenile petition alleging a delinquent act; (4) binding over the offender; (5) by the filing of an information as provided for in chapter 3; or (6) by making an appearance in person or through counsel in general sessions or any municipal court for the purpose of continuing the matter or any other appearance in either court for any purpose involving the offense. Tenn. Code Ann. § 40-2-104. The statute further provides that "[a] prosecution is also commenced . . . by finding an indictment or presentment or the issuing of a warrant identifying the offender by a deoxyribonucleic acid (DNA) profile." Tenn. Code Ann. § 40-2-104. None of the foregoing methods commence a criminal contempt proceeding under Tennessee Code Annotated section 29-9-102. Rather, a criminal contempt proceeding is often initiated either on the court's own motion or with the filing of a contempt petition by a private party. *See **Baker***, 417 S.W.3d at 437; ***Wilson v. Wilson***, 984 S.W.2d 898, 905 (Tenn. 1998) ("Under [Tennessee Rule of Criminal Procedure 42(b)], a contempt action can not proceed unless the trial court issues an order to show cause after reviewing a written application of the private attorney.").[6]

---

contempt is a crime in the ordinary sense [and that] convictions for criminal contempt are indistinguishable from ordinary criminal convictions[.]" ***Bloom***, 391 U.S. at 201; *see also **Gompers***, 233 U.S. at 610 ("These contempts are infractions of the law, visited with punishment as such. If such acts are not criminal, we are in error as to the most fundamental characteristic of crimes as that word has been understood in English speech."). Importantly, these cases compared criminal contempt cases to criminal cases and found them indistinguishable for *due process purposes*. The United States Supreme Court has since clarified that "[t]he fact that [the Court has] come to regard criminal contempt as 'a crime in the ordinary sense,' ***Bloom***, *supra*, 391 U.S., at 201, [] does not mean that any prosecution of contempt must now be considered an execution of the criminal law[.]" ***Young***, 481 U.S. at 799-800. The United States Supreme Court's "insistence on the criminal character of contempt prosecutions has been intended to rebut earlier characterizations of such actions as undeserving of the protections normally provided in criminal proceedings." *Id.* at 800 (citing ***In re Debs***, 158 U.S. 564, 596 (1895) (no jury trial in criminal contempt actions because a court in such a case is 'only securing to suitors the rights which it has adjudged them entitled to')). Importantly, the United States Supreme Court has explained "[t]hat [simply because] criminal procedure protections are now required in such prosecutions should not obscure the fact that these proceedings are not intended to punish conduct proscribed as harmful by the general criminal laws." ***Young***, 481 U.S. at 800. As discussed at length, *supra*, Tennessee jurisprudence on criminal contempt actions aligns with the United States Supreme Court's jurisprudence on same. Indeed, the Tennessee Supreme Court has explained that contempt proceedings are "sui generis," unique and in a class of their own, and that "[c]riminal contempt is often regarded as a 'crime' ***because certain substantial rights and constitutional privileges afforded criminal defendants are also afforded criminal contemnors***." ***Baker***, 417 S.W.3d at 436 (emphasis added).

[6] In ***Wilson***, the Tennessee Supreme Court also held "that the provisions of [Tennessee Rule of Civil Procedure 11] apply to the written applications which attorneys must file with the trial court to institute

- 11 -

If the Legislature intended for criminal contempt charges to be classified and treated as substantive criminal offenses, it would have enacted a statute to reflect that intent—as it has done before. The Tennessee Supreme Court has explained that some statutes "defin[e] certain types of contemptuous conduct as *substantive criminal offenses*." *Baker*, 417 S.W.3d at 437 n.8 (emphasis added). In *Brown v. Latham*, the Tennessee Supreme Court held that Tennessee Code Annotated section 36-5-104(a) "define[d] a criminal offense" and that the respondents were entitled to jury trials for their alleged violation of said statute. 914 S.W.2d 887, 888 (Tenn. 1996). Section 36-5-104(a) provides that any person who fails to comply with a child support order "may, in the discretion of the court, be punished by imprisonment in the county workhouse or county jail for a period not to exceed six (6) months." Tenn. Code Ann. § 36-5-104(a). The *Brown* Court held:

> The statute [(section 36-5-104(a))] states the essential indicia of a criminal offense. Its violation is not declared to be a contempt as contemplated by [Tennessee Code Annotated section] 29-9-102[]. Its stated purpose is not to compel performance but to punish for non-performance by imprisonment for a definite period of time. The language of subsection (b), "[n]o arrest warrant shall issue" under certain conditions, indicates a criminal proceeding. The penalty imposed, imprisonment for a period of time not to exceed six months, conforms with the definition of a misdemeanor stated in [Tennessee Code Annotated section] 39-11-110[], which provides, ". . . all violations of law punishable by fine or confinement for less than one (1) year, or both, are denominated misdemeanors." The punishment authorized far exceeds the $50 fine and ten days imprisonment provided in [Tennessee Code Annotated sections] 29-9-102, 103, which are the sanctions traditionally utilized to vindicate the authority of the courts. Therefore, the violation of [Tennessee Code Annotated section] 36-5-104(a) is a criminal offense, in a proceeding in which the respondent upon a finding of guilty may be imprisoned for a definite period not exceeding six months.

*Brown*, 914 S.W.2d at 888-89. In distinguishing sections 29-9-102 and 103 from section 39-11-110, the *Brown* Court necessarily implied that contempt proceedings brought under sections 29-9-102 and 103 are *not* criminal offenses. The Tennessee Supreme Court reiterated its *Brown* holding in *Ahern*, to-wit:

> Unlike [Tennessee Code Annotated section] 36-5-104(a), contempt provisions of [Tennessee Code Annotated section] 29-9-102 are used to vindicate the authority of the courts either by punishment or by forcing compliance. *Brown*, 914 S.W.2d at 888. The "offenses" enumerated in [Tennessee Code Annotated section] 29-9-102 are willful affronts to the

contempt proceedings." *Wilson*, 984 S.W.2d at 905.

- 12 -

court and include the willful misbehavior of an individual in the court's presence, the willful disobedience of an individual to a court order, abuse of or unlawful interference with the court proceedings, and jury tampering. Regardless of the form of the remedy or punishment, it is the court and its administration of justice that are offended by an act of contempt.

15 S.W.3d at 82. More recently, in **Baker**, the Tennessee Supreme Court recognized that the Legislature defined a defendant's violation of an order of protection as contemptuous conduct that was also a substantive criminal offense. **Baker**, 417 S.W.3d at 437 n.8 (citing Tenn. Code Ann. § 36-3-610(a)).[7] The Tennessee Supreme Court went on to explain that "conduct qualifying as contempt under these provisions constitutes a violation of the general criminal laws[.]" **Baker**, 417 S.W.3d at 437 n.8. The **Baker** Court also explained that "the Legislature has enacted statutes defining jury tampering and failure to appear as criminal offenses . . . even though this conduct is also subject to general contempt provisions." *Id.* at 439 (citing Tenn. Code Ann. §§ 39-16-509, -609, 29-9-102(3), (5)). On this Court's review, the Legislature has not enacted a statute making a contemnor's violation of a domestic relations decree a substantive criminal offense, and we decline to interpret Tennessee Code Annotated section 29-9-102 so broadly.[8] **Womack.**, 448 S.W.3d at 366.

We emphasize that our holding does not negate our current jurisprudence that "[c]riminal contempt is often *regarded* as a 'crime' because certain substantial rights and constitutional privileges afforded criminal defendants are also afforded criminal contemnors." **Baker**, 417 S.W.3d at 436 (emphasis added). As discussed at length, *supra*, there are several circumstances where a criminal contemnor is afforded the same rights and privileges as criminal defendants. This Court has even extended such rights to persons whose criminal contempt allegations have been dismissed and have held that the public records of the criminal contempt proceeding should be expunged. *See generally* **Robinson v. Fulliton**, 140 S.W.3d 304 (Tenn. Ct. App. 2003).[9] This Opinion does not disturb those

---

[7] In pertinent part, Tennessee Code Annotated section 36-3-610(a) provides that when a "defendant" violates an order of protection or a court-approved consent agreement, "the court may hold the defendant in civil or criminal contempt **and** punish the defendant in accordance with the law." Tenn. Code Ann. § 36-3-610(a) (emphasis added).

[8] Child support orders are often found in domestic relations decrees. We caution practitioners and trial courts to be mindful of both statutes when bringing and/or deciding criminal contempt allegations related to child support orders. *See* **Ahern**, 15 S.W.3d at 80 (where the Tennessee Supreme Court reversed the trial court when the trial court found father in criminal contempt for failure to pay child support under Tennessee Code Annotated section 29-9-102(3) but sentenced him to six months in jail, the remedy found under Tennessee Code Annotated section 36-5-104).

[9] Husband relies heavily on **Robinson** for his argument that the misdemeanor statute of limitations should apply to criminal contempt actions. For completeness, we note that **Robinson** was decided in 2003. Ten years later, the Tennessee Supreme Court decided **Baker v. State**, which continued to clarify the law concerning criminal contempt actions, discussed at length, *supra*. We believe the analysis applied in this opinion is most in line with the Tennessee Supreme Court's decision in **Baker**. 417 S.W.3d 428.

- 13 -

conclusions.[10]

Having determined that the statute of limitations for criminal misdemeanors does not apply, we turn to Wife's argument that the statute of limitations for domestic relations decrees applies. Tennessee Code Annotated section 28-3-110(e) provides:

> Notwithstanding subsection (a), ***there is no time within which a judgment or decree in a domestic relations matter*** issued by a court with domestic relations jurisdiction pursuant to title 36 ***must be acted upon, unless otherwise specifically provided for under title 36***.

Tenn. Code Ann. § 28-3-110(e) (emphases added). It is undisputed that the criminal contempt charges at issue in this case arose from a domestic relations decree, *i.e.,* the January 5, 2021 order dividing the marital property. It is also undisputed that section 28-3-110(e) applies to civil contempt proceedings filed to enforce domestic relations judgments and decrees. *See **Proctor v. Proctor***, No. M2018-01757-COA-R3-CV, 2020 WL 2764410 (Tenn. Ct. App. May 27, 2020); ***Allison v. Hagan***, 211 S.W.3d 255 (Tenn. Ct. App. 2006); ***Gleason v. Gleason***, 164 S.W.3d 588 (Tenn. Ct. App. 2004).[11] The parties disagree concerning whether section 28-3-110(e) applies to criminal contempt petitions as well.

On appeal, Husband's sole argument that section 28-3-110(e) applies only to civil contempt petitions rests on his reading of Tennessee Code Annotated section 28-3-101, which provides that "[a]ll *civil* actions . . . shall be commenced after the cause of action has accrued [] within" the time period prescribed in the statute. Tenn. Code Ann. § 28-3-101 (emphasis added). Thus, Husband argues that section 28-3-110(e) "is limited to civil actions and does not apply to criminal contempt matters." (emphasis omitted). Husband

---

[10] Husband also cites ***Church of God v. Tomlinson Church of God***, 247 S.W.2d 63 (Tenn. 1952) to support his argument that a one-year statute of limitations applies. Specifically, Husband focuses on the following portion of the opinion:

> It is next insisted that the Chancellor erred in his ruling that defendants cannot be held in contempt for acts alleged to have been committed more than one year next preceding the citation to 'show cause', etc. We think the Chancellor was correct, on the ground that such acts are misdemeanors and are barred by the statute of limitations of one year.

*Id.* at 68. As an initial matter, there is no specific statute cited for the proposition that a one-year statute of limitations existed. Furthermore, we note that the Tennessee Supreme Court decided **Church of God** in 1952. Although it has never specifically overruled its opinion, the Court's more recent opinions, discussed at length in this Opinion, provide more insight concerning interpretation of criminal contempt cases.

[11] We note that when these cases were decided there was a ten-year statute of limitations on domestic relations decrees and judgments. Effective March 20, 2020, the Legislature amended the statute to provide that "there is no time within which a judgment or decree in a domestic relations matter . . . must be acted upon." Tenn. Code Ann. § 28-3-110(e).

is partially correct. Section 28-3-110(e) is limited to civil actions, but criminal contempt petitions can be—and often are—brought in civil actions. As discussed above, contempt proceedings are unique and ***incidental to the case out of which they arise***. ***Doe***, 104 S.W.3d at 474. As such, civil and criminal contempt proceedings may arise out of both civil and criminal cases. Indeed, the Legislature has explicitly provided that this Court "has appellate jurisdiction over ***civil or criminal contempt*** [proceedings] arising out of a ***civil*** matter." Tenn. Code Ann. § 16-4-108(b) (emphasis added). Likewise, the Legislature has explicitly provided that the Court of Criminal Appeals has appellate jurisdiction over "***[c]ivil or criminal contempt*** [proceedings] arising out of a ***criminal*** matter." Tenn. Code Ann. § 16-5-108(a)(3) (emphases added). The foregoing language shows that the Legislature recognizes that civil courts may hear both civil and criminal contempt cases and that criminal courts may hear both civil and criminal contempt cases. What makes a case a civil or criminal action in the context of section 28-3-101 is whether the underlying proceeding, out of which the contempt allegations arose, was a civil or criminal matter. Here, it is undisputed that Wife's criminal contempt allegations arose out of the parties' underlying divorce proceedings, *i.e.,* a civil matter. If they had not, this appeal would not be before this Court. As such, this contempt proceeding, although one for *criminal* contempt, arose out of and is a *civil* matter. Accordingly, Tennessee Code Annotated sections 28-3-101 and 28-3-110(e) are applicable here.[12] As such, there was no statute of limitations within which Wife was required to bring her criminal contempt petitions against Husband.[13]

Given our conclusions, Husband's issues concerning whether: (1) the Amended Contempt Petition "related back" to the Original Contempt Petition's filing date; (2) the statute of limitations was tolled; and (3) the statute of limitations was waived, are moot. Accordingly, we turn to Husband's final issue, whether he was provided proper notice of the charges against him.

### C. Notice

Whether a contemnor receives sufficient notice of the contempt charges against him or her is a question of law that we review *de novo*. ***Sprague v. Sprague***, No. E2012-01133-COA-R3-CV, 2013 WL 3148278, at *3 (Tenn. Ct. App. June 18, 2013) (citing ***State ex rel. Farris v. Bryant***, No. E2008-02597-COA-R3-CV, 2011 WL 676162, at *5 (Tenn. Ct. App.

---

[12] For completeness we note that there is no language in section 28-3-110(e) that indicates that the Legislature intended for the statute of limitations to apply solely to civil contempt matters. Indeed, section 28-3-110(e) does not discuss civil or criminal contempt at all.

[13] We note that Wife cited ***Gafford v. Gafford***, No. 01-A-01-9404-CV00178, 1994 WL 687077 (Tenn. Ct. App. Dec. 9, 1994) to support her argument that section 28-3-110(e) applies to Wife's criminal contempt petition. While ***Gafford*** involved criminal contempt allegations for failure to pay child support, the wife in that case brought such allegations under Tennessee Code Annotated section 36-5-104, discussed *supra* footnote 8, rather than section 29-9-102. ***Id.*** at *2. As such, that case is not directly applicable to the issue before this Court.

- 15 -

Feb. 24, 2011)).  We first note that contempt may be either "direct" or "indirect," depending on whether the alleged contemptuous conduct occurred in the court's presence (direct) or outside of court (indirect).  *See **State v. Beeler***, 387 S.W.3d 511, 520 (Tenn. 2012) (citing ***Black***, 938 S.W.2d at 398).  When the alleged contempt is "indirect," it is incumbent on courts to ensure that the notice and procedural due process requirements are met.  ***Beeler***, 387 S.W.3d at 520; *see also **McClain v. McClain***, 539 S.W.3d 170, 219 (Tenn. Ct. App. 2017).  The allegations in this case allege indirect conduct; thus, Husband was entitled to notice and procedural due process.

Tennessee Rule of Criminal Procedure Rule 42(b) addresses the notice required to initiate criminal contempt charges against a contemnor, to-wit:

> **(b) Disposition on Notice and Hearing.** A criminal contempt shall be initiated on notice, except as provided in subdivision (a) of this rule.
>
> > (1) *Content of Notice.* The criminal contempt notice shall:
> >
> > > (A) state the time and place of the hearing;
> > >
> > > (B) allow the alleged contemner a reasonable time to prepare a defense; and
> > >
> > > (C) state the essential facts constituting the criminal contempt charged and describe it as such.
> >
> > (2) *Form of Notice.* The judge shall give the notice orally in open court in the presence of the alleged contemner or by written order, including an arrest order if warranted. The notice and order may also issue on application of the district attorney general, an attorney appointed by the court for that purpose, or an attorney representing a party in the case.

Tenn. R. Crim. P. 42(b).  "While parties seeking to hold another in criminal contempt should draft their petitions to comply with [Tennessee Rule of Criminal Procedure] 42(b)'s notice requirements, the court in which a petition for criminal contempt is filed must, in the final analysis, assure that the accused party receives adequate notice of the charges he or she faces." ***Long***, 221 S.W.3d at 13 (citing ***McPherson v. McPherson***, No. M2003-02677-COA-R3-CV, 2005 WL 3479630, at *5 (Tenn. Ct. App. Dec.19, 2005)). Concerning what constitutes adequate notice, this Court has explained that

> [a]dequate notice is notice that is clear and unambiguous to the average citizen. ***Gompers***[, 221 U.S. at 446]; ***Jones v. Jones***, [No. 01A01-9607-CV-00346, 1997 WL 80029, at *4 (Tenn. Ct. App. Feb. 26, 1997)].  Because the same conduct can constitute both civil contempt and criminal contempt and

because both contempt proceedings may carry with them the possibility of incarceration, it is imperative that notice specifically charge a party with criminal contempt. *Jones*[], 1997 WL 80029[,] at *2-3. Adequate notice encompasses, but is not limited to, the mandates of [Tennessee Rule of Criminal Procedure] 42(b), which require that notice state the time and place of the hearing, allow the defendant reasonable time to prepare a defense, and state succinctly for the accused the "essential facts" constituting the charge. *See Jones*[], 1997 WL 80029[,] at *3. Essential facts are those which, at a minimum, (1) allow the accused to glean that he or she is being charged with a crime, rather than being sued by an individual, (2) enable the accused to understand that the object of the charge is punishment—not merely to secure compliance with a previously existing order, and (3) sufficiently aid the accused to determine the nature of the accusation, which encompasses the requirement that the underlying court order allegedly violated by the accused is itself clear and unambiguous. *See Gompers*[, 221 U.S. at 446]; *Doe*[], 104 S.W.3d at 471; *McPherson*[], 2005 WL 3479630[,] at *5; *See Jones*[], 1997 WL 80029[,] at *3.

*Long*, 221 S.W.3d at 13-14.

On appeal, Husband's primary argument is that the Amended Contempt Petition "failed to allege all facts necessary" to provide him with proper notice. Husband also briefly argues that a portion of the January 5, 2021 order "was not clear, specific, and unambiguous." Concerning the second argument, Husband applies it only to his alleged failure to add Wife's name to Cayman National Bank account #10621. Because Husband's arguments concern both the January 5, 2021 order and the Amended Contempt Petition, *i.e.,* the charging instrument, we briefly review those.

As discussed above, the January 5, 2021 order required Husband to: (1) add Wife as an owner to the "bank accounts associated with the Cayman Island [P]roperties" within fifteen (15) days of the order; (2) make no further withdrawals from said bank accounts; (3) ensure that account #10621 had a balance of at least $183,350.12; (4) within thirty (30) days of the order, provide Wife an accounting of all transactions involving account #10621 since August 31, 2020 if the account did not have a balance of $183,350.12; and (5) reimburse Wife for any withdrawals other than reasonable and necessary business expenses within forty-five (45) days of the order. In the Amended Contempt Petition, Wife alleged that Husband violated each of the foregoing mandates. Specifically, Wife alleged that Husband: (1) failed and refused to add Wife as an owner on any of the Cayman Island bank accounts, including account #10621; (2) made withdrawals from account #10621; (3) closed account #10621, leaving it with a balance of $0.00; (4) failed and refused to provide an accounting within 30 days of the order of all transactions involving account #10621; and (5) failed and refused to reimburse Wife for at least $183,350.12 and any other non-business expenses from account #10621 within 45 days of the order.

Relevant here, in the contempt order, the trial court found that Husband admitted that he did not add Wife's name to the Cayman Island bank accounts. The trial court also found that Husband admitted that he closed account #10621. Accordingly, the trial court held Husband in criminal contempt for these actions, finding that they constituted the same behavior and treating both actions as one count of contempt. We designate these violations as Count 1. The trial court also found that Husband made the following three withdrawals from account #10621: (1) $193,428.04 on January 22, 2021; (2) $36,606.50 on January 28, 2021; and (3) $4,202.40 on February 3, 2021.[14] The trial court found that Husband was specifically ordered not to make any further withdrawals from account #10621 and found Husband in contempt for each withdrawal. We designate these violations as Counts 2 through 4, respectively. We now turn to the substantive issues.

### 1. Essential Facts

Husband alleges that the Amended Contempt Petition failed to provide the "essential facts" of each charge against him. It appears that the essential facts Husband alleges were missing were the "date[s] of the alleged contemptuous act[s]." Specifically, he argues that, when an offense is subject to the statute of limitations, "there should be a sufficiently definite averment of time in the indictment to show that the offense was committed within the statutory limit." In support of his argument, Husband cites the following paragraph from *Prince v. State*, 529 S.W.2d 729 (Tenn. Crim. App. 1975):

> The rule to be deduced from our cases is that, where there is no statute of limitations barring the offense, it is unnecessary to state the day, or even the year, but it is sufficient to aver generally that the offense was committed before the finding of the indictment; that it is not necessary to state in any case the day on which the offense was committed, unless the day itself is of the essence of the offense, as of offenses committed against laws passed for the preservation of the Sabbath, or unless the time is important to bring the offense within the operation of new or amended statutes or the like; but where there is a statute of limitations that bars the offense there should be a sufficiently definite averment of time in the indictment to show that the offense was committed within the statutory limit; and, finally, that where an impossible date is given, as in the present indictment, it will be disregarded if the offense is one as to which there is no statute of limitations, or as to which the date itself is not important

*Id.* at 733 (quoting *State v. Shaw*, 82 S.W. 480, 480 (Tenn. 1904)).

---

[14] In its contempt order, the trial court found that Husband withdrew $4,202.40 on January 22, 2021. This appears to be a typo as both parties acknowledge, in their appellate briefs, that Husband withdrew $4,202.40 on February 3, 2021, in relation to his closing of account #10621.

- 18 -

As an initial matter, on this Court's review, the foregoing rule has never been cited in our case law in the context of contempt under Tennessee Code Annotated section 29-9-102. However, we need not decide if such rule applies to contempt actions brought under section 29-9-102 for the reasons discussed, *infra*. On appeal, Husband argues that, because Wife's criminal contempt allegations were subject to a one-year statute of limitations, the Amended Contempt Petition should have set out the precise dates on which the contemptuous acts were alleged to have occurred. As discussed at length above, there was no statute of limitations within which Wife was required to bring her criminal contempt petition. Thus, under the foregoing authority from Husband, because there was no statute of limitations, it was "unnecessary [for Wife] to state the day, or even the year, but it [was] sufficient to aver generally that the offense was committed before the [filing of the contempt petition]." *Prince*, 529 S.W.2d at 733. Accordingly, even assuming, *arguendo*, that the foregoing rule applies to contempt petitions brought under section 29-9-102, the authority Husband provides leads us to conclude that Wife was not required to provide specific dates of the alleged contemptuous acts.

## 2. A Clear, Specific, and Unambiguous Order

Concerning Count 1, Husband briefly argues that the January 5, 2021 order "was not clear, specific, and unambiguous." Briefly, there are three essential elements to criminal contempt: (1) a court order; (2) a contemnor's violation of that order; and (3) proof that the contemnor willfully violated the order. *Pruitt v. Pruitt*, 293 S.W.3d 537, 545 (Tenn. Ct. App. 2008) (citing *Foster v. Foster*, No. M2006-01277-COA-R3-CV, 2007 WL 4530813, at *5 (Tenn. Ct. App. Dec. 20, 2007)). The party pursuing the criminal contempt must prove that: (1) the order allegedly violated was lawful; (2) the order was clear and unambiguous; (3) the contemnor violated the order; and (4) the contemnor acted willfully when violating the order. *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 354-55 (Tenn. 2008); *Furlong v. Furlong*, 370 S.W.3d 329, 336 (Tenn. Ct. App. 2011) (stating that the four-element analysis outlined in *Konvalinka* applies to criminal and civil contempt actions). As to Count 1, Husband argues that the language in the January 5, 2021 order was not clear and unambiguous. Specifically, Husband alleges that the following provisions within the order conflict:

Paragraph 2:

With regard to the real property received by each party, they shall also receive any and all debts, business interests, and bank accounts that go with that property. The party receiving the property shall be responsible for the preparation of any and all deeds or other processes necessary to effectuate the transfer of said property, business and or bank account . . .

Paragraph 5:

- 19 -

With regards to bank accounts associated with the Cayman Island properties, Husband shall not close the accounts but instead shall add Wife as an owner to said accounts within 15 days of this order . . . . Thereafter, Wife, as an owner shall have the authority to remove Husband from said bank accounts.

Husband's entire argument as to this issue is:

Cayman National Bank account #16021 was held by Seven Mile Beach Hotel Development Corp., not Husband individually. Seven Mile was awarded to Wife in the January 5, 2021 Ruling. Thus, paragraph 2 places responsibility for processes necessary to effectuate the transfers at issue in this case on Wife, while paragraph 5 places the responsibility on Husband. As these provisions conflict with one another, neither should constitute the clear directive necessary to sustain a finding of criminal contempt.

The trial court's contempt order provides insight into why it ordered Husband to add Wife as an owner of the Cayman Island accounts, to-wit:

Also at issue in the [divorce] trial was how to effectively transfer the property to Wife. The [trial c]ourt credited Wife's testimony that she could not open a bank account and must be added to the business account already open. The [trial c]ourt also credited the Affidavit of Wife's expert, Dawn Major, as to the steps that must be taken to effectuate the transfer. Accordingly, the [trial c]ourt issued a specific order with regard to the Cayman Properties.

In the contempt order, the trial court found that the language it used in Paragraph 5 of the January 5, 2021 order was clear, specific, and unambiguous. Taken in context with the foregoing, we agree. Given the uniqueness of the Cayman Island bank accounts, Wife's inability to open an account herself, and the fact that the effective transfer of such property was at issue during the parties' divorce trial, we disagree with Husband's characterization of Paragraphs 2 and 5 as conflicting with one another. Rather, it appears that Paragraph 2 provided general instruction as to how the parties would transfer assets; whereas, Paragraph 5 contained specific instructions, which were necessary given the unique circumstances surrounding the Cayman Island properties and accounts.

We also note that Husband's argument overlooks the fact that the trial court combined two of Husband's contemptuous acts into Count 1, *i.e.,* Husband's failure to add Wife's name to account #10621 and Husband's closing of account #10621. Even assuming, *arguendo*, that the foregoing provisions conflict, such conflict would affect only the first contemptuous conduct, *i.e.,* Husband's failure to add Wife's name to account #10621. Husband does not argue that the January 5, 2021 order was not clear, specific, or unambiguous concerning the directive that Husband was not permitted to close account

#10621.  From our review, the January 5, 2021 order very clearly prohibited Husband from closing the account.  Accordingly, even if we were to conclude that Paragraphs 2 and 5 conflict so as to negate the trial court's finding of criminal contempt stemming from Husband's failure to add Wife's name to the account, its finding of criminal contempt stemming from Husband's decision to close the account would not be affected by such conflict.

### 3.  Husband Received Proper Notice

The foregoing notwithstanding, the record shows that Husband was aware of the criminal contempt charges against him and was ready to proceed with a criminal contempt trial.  A brief review of the procedural history concerning the contempt charges is helpful here.  As discussed above, on September 30, 2021, Wife filed her Original Contempt Petition.  On February 3, 2022, Wife filed the Amended Contempt Petition, which alleged, in pertinent part, that Husband "flagrantly violated each and every substantive tenant of Paragraph five (5) of the Ordering Section [of the January 5, 2021 findings of fact and conclusions of law]."  Wife alleged that such actions constituted a knowing and willful violation of the trial court's January 5, 2021 order and asked the trial court to hold Husband in willful civil and criminal contempt under Tennessee Code Annotated section 29-9-101, *et seq*.

On March 14, 2022, Husband filed a motion to bifurcate and for more definite statement asking Wife to clarify which counts in her petitions were criminal and which counts were civil.  On April 1, 2022, Wife filed a response to Husband's motion and clarified that she was proceeding with criminal contempt charges against him for his: (1) failure to add Wife's name to account #10621; (2) closing of account #10621; and (3) non-business withdrawals from account #10621.  On April 6, 2022, the trial court heard Husband's motion for a more definite statement.  During that hearing, Husband's counsel stated that Wife's response outlined how she was "going to proceed . . . in the way of criminal contempt, so we now know the answer to our question, so we're in a position, as it relates to that issue, to proceed."  On April 14, 2022, Husband filed an answer to the Amended Contempt Petition.  Regarding the contempt issues *sub judice*, Husband responded to the charges by declining to answer "on the basis of his Fifth Amendment Privilege against self-incrimination."

On November 3, 2022, the trial court entered a consent order setting for trial, *inter alia*, Wife's Original and Amended Contempt Petitions.  In this order, the trial court found that, "in lieu of a formal arraignment, [Husband] enter[ed] a plea of not guilty and waive[d] a formal reading of the charges against him."  On March 17, 2023, Husband filed an amended and supplemental answer to the Amended Contempt Petition, supplementing his answers to charges not at issue here.  Also on March 17, 2023, Wife filed her trial memorandum.  Therein, Wife reiterated that she was seeking to hold Husband in criminal contempt for, *inter alia*: (1) failing to add Wife's name to account #10621 and closing the

account; (2) withdrawing $193,428.04 from the account on January 22, 2021; (3) withdrawing $36,606.50 from the account on January 28, 2021; and (4) withdrawing $4,202.40 from the account on February 3, 2021.

On March 20, 2023, the trial court heard the Amended Contempt Petition. At the close of Wife's proof, Husband orally moved for a Motion for Judgment of Acquittal. On March 21, 2023, Husband filed a written motion requesting same. Similar to his appellate argument, discussed *supra*, Husband argued that he could not be found guilty of criminal contempt due to improper notice in the charging instrument.

In its order on contempt, the trial court found that the allegations in Wife's Amended Contempt Petition and the elections of criminal contempt outlined in her response to Husband's motion to bifurcate were "sufficiently clear to provide notice of the allegations and that he [was] being charged with criminal contempt." We agree. Husband's argument that he did not receive proper notice is disingenuous given: (1) Wife's detailed response to his motion for more definite statement; (2) his counsel's statement that Husband understood how Wife would proceed with the criminal contempt and that he was "in a position, as it relates to that issue, to proceed"; (3) Husband's waiver of a formal reading of the charges against him; and (4) Wife's trial memorandum explicitly outlining the criminal contempt charges against Husband. We conclude that the foregoing provided Husband with more than "adequate" notice of the criminal contempt charges pending against him. *See* **Long**, 221 S.W.3d at 13-14; Tenn. R. Crim. P. 42(b).

## V. Conclusion

For the foregoing reasons, we affirm the trial court's order. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellant, Stanley H. Trezevant, III. Execution for costs may issue if necessary.

_s/ Kenny Armstrong_
KENNY ARMSTRONG, JUDGE
